IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY J. ZANGHI, KENNETH J. SOWERS, DOMINIC MCCUCH, JAMES HOHMAN, and DARRELL SHETLER, *on behalf of themselves and others similarly situated*; UNITED STEEL, PAPER AND FORESTRY, RUBBER MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, | CIVIL ACTION NO. 3:13-146 <br><br> JUDGE KIM R. GIBSON |
| Plaintiffs, | |
| v. | |
| FREIGHTCAR AMERICA, INC.; JOHNSTOWN AMERICA CORPORATION; and JOHNSTOWN AMERICA CORPORATION USWA HEALTH & WELFARE PLAN, | |
| Defendants. | |

**MEMORANDUM AND ORDER OF COURT**

**I.        INTRODUCTION**

Plaintiffs filed a two-count complaint under the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA") regarding a dispute over continued medical and life insurance contributions to retirees of a railcar facility. Before the Court is a motion to dismiss, transfer, or stay proceedings (ECF No. 17) filed by Defendants FreightCar America, Inc., Johnstown America Corporation, and Johnstown America Corporation USWA Health & Welfare Plan (collectively, "FreightCar"). FreightCar asks the Court to dismiss the complaint in favor of FreightCar's first-filed action in the Northern District of Illinois or to stay this case until the Illinois

court determines the most appropriate venue. Alternatively, Freightcar requests this case be transferred to the Northern District of Illinois or to the Pittsburgh Division of the Western District of Pennsylvania. For the reasons that follow, the Court will deny FreightCar's motion (ECF No. 17).

**II.    JURISDICTION AND VENUE**

The Court exercises jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. § 185, and 29 U.S.C. §§ 1132(e)(1) and (f). Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Johnstown, Pennsylvania. Venue is also proper under 29 U.S.C. § 185 and 29 U.S.C. § 1132(e)(2). Because the parties disagree on the most appropriate venue, however, the Court will fully address that issue below.

**III.   BACKGROUND**

This case stems from ten years of litigation concerning the rights to continued medical coverage and life insurance benefits ("welfare benefits")[1] under an employee benefit plan. To put the current matter in context, the Court will first discuss the underlying facts and extensive procedural history in this case.

**A.    Underlying Facts**

From 1923 to 1991, Bethlehem Steel Corporation ("Bethlehem") produced railroad freight cars at a facility in Johnstown, Pennsylvania. (Compl. ¶ 3). In 1991, Bethlehem sold the facility to Johnstown America Industries, Inc. (*Id.*). In 1999, Johnstown America

---

[1] The parties refer to these medical coverage and life insurance benefits as "welfare benefits." (Compl. ¶ 47). The Court will continue using this terminology for clarity purposes.

Industries, Inc. renamed itself Transportation Technologies Industries, Inc., selling its railcar business to newly formed Johnstown America Corporation ("JAC").[2] (*Id.* ¶ 4). To better reflect its business of manufacturing railcars, in 2004, JAC changed its name to FreightCar America, Inc. (*Id.*).

Throughout the years, hourly production and maintenance workers at the Johnstown facility bargained for welfare benefits. (*Id.* ¶¶ 6, 33, 34). These benefits are assured through collective bargaining agreements between former employers of the Johnstown facility and the workers' union representative: the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW").

The welfare benefits at issue are described in and provided through "negotiated plan booklets." (*Id.* ¶ 36). A 1990 booklet known as the Bethlehem *Program of Hospital-Medical Benefits* ("Bethlehem PHMB") stated:

> Any pensioner or individual receiving a Surviving Spouse's benefit who become covered by the [PHMB] **shall not have such coverage terminated or reduced** . . . so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, **notwithstanding the expiration of this agreement, except as the company and union may agree otherwise.**

(ECF No. 1-4 at 67 ¶ 7) (emphasis added). After JAC acquired the Johnstown facility, it entered into an October 18, 1991 agreement with the USW, whereby JAC would "create mirror bargaining unit employee benefit plans identical in all material respects to the Bethlehem plans they replace." (Compl. ¶ 41) (citing ECF No. 1-4 at 72). Additionally,

---

[2] Johnstown America Corporation is now a limited liability company and subsidiary of FreightCar America, Inc.

when JAC purchased the Johnstown facility, Bethlehem apparently agreed to reimburse JAC for the cost of these welfare benefits. (ECF No. 1-8 at 5).

Although JAC initially fulfilled its obligations under the 1991 mirroring agreement to pay retiree welfare benefits, JAC never prepared a new plan apart from the Bethlehem PHMB. (Compl. ¶ 47). The parties agree that the Bethlehem PHMB controlled the terms of retiree welfare benefits, at least until 1997. (*Id.* ¶ 44). In 1997, however, JAC and the USW negotiated a new collective bargaining agreement ("1997 CBA") that is central to this dispute. Specifically, the 1997 CBA provided that "[the CBA] and the documents expressly referred to herein are the only documents by which the parties intend to be contractually or statutorily bound." (ECF No. 1-8 at 5). As well, the 1997 CBA provided:

> The Parties agree that employees shall be eligible for insurance and other benefits as set forth in JAC's Employee Guide for Represented P&M [Production and Maintenance] employees, as amended during the negotiations which preceded the execution of this collective bargaining agreement.

(*Id.* at 6). Drafted in 1993, the *JAC Employee Guide* stated, "Subject to collective bargaining, the company reserves the right to end, suspend, or amend the plans at any time, in whole or in part." (ECF No. 1-6 at 4). FreightCar contends that, because the 1997 CBA did not incorporate the 1991 mirroring agreement, it was no longer obligated to provide welfare benefits under the Bethlehem PHMB. (*Id.*). Nevertheless, between 1991 and 2002, FreightCar provided welfare benefits to retirees under the terms of the Bethlehem PHMB. (Compl. ¶ 47).

When the 1997 CBA expired on October 31, 2001, the parties again negotiated for a new collective bargaining agreement. (ECF No. 1-8 at 8). FreightCar proposed a reduction in its contributions for welfare benefits, in part due to Bethlehem's inability to

4

reimburse FreightCar for these benefits.³ (*Id.*). The parties failed to reach an agreement, and FreightCar subsequently notified retirees that it would terminate welfare benefits effective May 1, 2002. (Compl. ¶ 48).

### B. The *Deemer* Litigation

On April 26, 2002, retiree plaintiffs filed suit in the Pittsburgh Division of the Western District of Pennsylvania.⁴ Plaintiffs alleged that FreightCar's termination of welfare benefits violated Section 301 of the LMRA, 29 U.S.C. § 185(a), and Sections 502(a)(1)(B) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). (ECF No. 1-3 at 2–3). Plaintiffs argued that the Bethlehem PHMB guaranteed welfare benefits throughout retirement—even if the labor agreements were to expire—unless FreightCar and the USW "agreed otherwise." (*Id.* at 3). FreightCar argued that the 1997 CBA expressly abrogated the Bethlehem PHMB, giving it the right to terminate benefits. (*Id.*). On July 14, 2003, District Judge Robert J. Cindrich denied FreightCar's motion for summary judgment and ordered the case to proceed to trial. (*See* ECF No. 1-6). Judge Cindrich also certified the *Deemer* class in a September 27, 2004 decision. (ECF No. 1-3 at 5).

### C. The *Britt* Litigation

The *Britt* plaintiffs worked at the same Johnstown facility as the *Deemer* plaintiffs. On August 29, 2003, these plaintiffs filed suit in the Pittsburgh Division of the Western District of Pennsylvania, alleging they had earned the rights to receive $400 in monthly

---

³ In June 2001, Bethlehem became delinquent in its obligations to reimburse JAC for the cost of welfare benefits. Bethlehem filed Chapter 11 bankruptcy in October 2001. (ECF No. 1-8 at 8).

⁴ This case is at 2:02-cv-00806-RCM on the Western District of Pennsylvania CM/ECF System.

5

pension supplements and the same welfare benefits at issue in *Deemer*.[5] (ECF No. 1-3 at 5). Like the *Deemer* plaintiffs, the *Britt* plaintiffs alleged that FreightCar's refusal to pay welfare benefits violated Section 301 of the LMRA and Sections 502(a)(1)(B) and (a)(3) of ERISA. On July 1, 2004, District Judge David S. Cercone issued a decision certifying the *Britt* class.

### D.     The 2005 Settlement Agreement

FreightCar and both the *Deemer* and *Britt* plaintiffs reached a judicially approved settlement on May 4, 2005. (Compl. ¶ 64). FreightCar agreed, among other things, to continue life insurance benefits and to make set monthly contributions to the Steelworkers Health and Welfare Fund in order to fund health insurance coverage until November 30, 2012. (*Id.* ¶¶ 65, 67). The settlement agreement further provides:

> [I]f in the future [i.e., after November 30, 2012], Defendant JAC fails to make the contributions . . . Plaintiffs have the right to re-file with the Court the Britt and Deemer litigations against all Defendants, and in such re-filed lawsuits, the parties shall be able to make full use of depositions, documents and other materials thus far produced during discovery.

(ECF No. 1-3 ¶ 16(f)). The agreement defines "Court" as the United States District Court for the Western District of Pennsylvania. (*Id.* ¶ 5(c)).

### E.     The *Sowers* Litigation

In 2007, a new subset of plaintiffs filed suit in the Pittsburgh Division of the Western District of Pennsylvania.[6] Unlike the plaintiffs in *Deemer* and *Britt*, the *Sowers* plaintiffs were active employees of the Johnstown facility who were close to attaining

---

[5] This case is at 2:03-cv-01298-RCM on the Western District of Pennsylvania CM/ECF System.

[6] This case is at 3:07-cv-00201-KRG on the Western District of Pennsylvania CM/ECF System.

eligibility for retirement benefits. The *Sowers* plaintiffs alleged that FreightCar violated Section 510 of ERISA, 29 U.S.C. § 1140, because it "deliberately idled" much of the Johnstown plant and laid off long-service union employees to prevent them from attaining eligibility for pension benefits; such benefits included the same retiree welfare benefits at issue in *Deemer* and *Britt*. (ECF No. 18-1 ¶¶ 47, 48).

District Judge Terrence F. McVerry transferred the case to the Johnstown Division of the Western District of Pennsylvania, finding that the "cause of action unquestionably arose in Johnstown, Cambria County, Pennsylvania, and involves employer/employee rights and relationships exclusive to Defendant's facility and employees in Johnstown." (ECF 21-1 at 2). This Court subsequently granted plaintiffs' motion for class certification and motion for a preliminary injunction. *See Hayden v. Freightcar Am., Inc.*, CIV.A. 3:2007-201, 2008 WL 375762 (W.D. Pa. Jan. 11, 2008). While the case was on appeal, the parties reached a settlement whereby, in addition to pension benefits, the *Sowers* class would receive retiree medical and life insurance contributions under the 2005 settlement agreement. (ECF No. 1-2 ¶ 7).

### F. The Current Dispute

In June 2011, FreightCar and the USW resumed negotiations concerning the continuation of welfare benefits after November 30, 2012. (ECF No. 20 at 12; ECF No. 18 at 8). Although FreightCar alleges that the parties reached "an agreement in principle" in December 2012, (ECF No. 18 at 8), the parties never came to a final agreement. On June 4, 2013, FreightCar presented Plaintiffs a "term sheet" to memorialize their agreement, which Plaintiffs rejected during a June 14, 2013 telephone conference. (ECF No. 18-2 ¶

11). At that time, FreightCar representatives informed Plaintiffs that FreightCar's Board of Directors would "assess its options." (*Id.*).

On July 8, 2013, FreightCar filed a declaratory judgment action in the United States District Court for the Northern District of Illinois, requesting a declaration that FreightCar has the legal right to terminate retiree welfare benefits.[7] (ECF No. 18-3, Illinois Compl. ¶ 52). Defendants in the Illinois action include over 650 Johnstown facility retirees composing the *Deemer*, *Britt*, and *Sowers* classes. On July 9, 2013, FreightCar sent counsel for the USW a copy of the Illinois complaint, along with a letter stating that, effective October 1, 2013, FreightCar would "cease all Company contributions provided under the [2005] Settlement Agreement for retiree medical coverage" and would "no longer provide the life insurance benefits set forth in Section 16(i) of the [2005] Settlement Agreement to the *Deemer*, *Britt*, and *Sowers* groups of retirees." (ECF 10-3 at 10).

Representative retirees and the USW filed a complaint in this Court on July 9, 2013, the same day they received notice of the Illinois action. (ECF No. 1). Plaintiff class representatives once again assert that the termination of welfare benefits violates Section 301 of the LMRA and Section 502 of ERISA. (Compl. ¶¶ 82–87). On August 5, 2013, FreightCar responded with the instant motion to dismiss, transfer, or stay proceedings (ECF No. 17). The parties have submitted extensive accompanying briefs and exhibits. The matter is now ready for disposition.

---

[7] This case is at 1:13-cv-04889 on the Northern District of Illinois CM/ECF System.

## IV.  DISCUSSION

FreightCar seeks dismissal of this case in favor of its first-filed action in the Northern District of Illinois.  Alternatively, FreightCar requests a transfer of this case to the Northern District of Illinois or a stay of proceedings pending a determination from the Northern District of Illinois as to the most appropriate venue.  Finally, FreightCar asks for a transfer of this case to the Pittsburgh Division of the Western District of Pennsylvania.  The Court will address each request in turn.

### A.  **First-filed Rule**

Based on principles of comity, equity, and judicial economy, the first-filed rule provides that, "in cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) (citations omitted).  The rule ordinarily applies when the first-filed case is

> truly duplicative of the [later-filed] suit before the court.  That is, the one must be materially on all fours with the other.  The issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other.

*Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 (3d Cir. 2007) (internal citation and punctuation omitted).  Since adoption of the rule, however, courts have departed from it in certain circumstances.  *See E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d at 972 ("District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule.").  Courts have departed from the rule when (1) rare or extraordinary circumstances are present; (2) a party has acted inequitably, in bad faith, or with an eye to forum shopping; (3) the second-filed action is

9

further developed than the first action at the time the motion is made; or (4) a party has filed the first suit to "preempt the opponent's imminent filing of a suit in a different, less favorable forum." *Id.* at 976; *accord Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 399 (E.D. Pa. 2005); *Stone Creek Mech., Inc. v. Carnes Co., Inc.*, CIV.A. 02-CV-1907, 2002 WL 31424390, at *2 (E.D. Pa. Oct. 25, 2002).

In this case, FreightCar argues that Plaintiffs' complaint must be dismissed because FreightCar filed its declaratory judgment action in the Northern District of Illinois just one day before Plaintiffs filed suit in this Court. In response, Plaintiffs do not dispute that the cases are duplicative. (*See generally* ECF No. 20). Rather, Plaintiffs argue that the circumstances justify a departure from the rule because, among other things, this case arises from three underlying class actions litigated in the Western District of Pennsylvania and the underlying 2005 settlement agreement gives them the right to litigate in this district. (ECF No. 20 at 18).[8]

The Court agrees with Plaintiffs that the extraordinary circumstances are sufficient to justify a departure from the first-filed rule. These circumstances include (1) the 2005 settlement agreement showing that the parties intended the Western District of Pennsylvania to be the appropriate forum for subsequent litigation concerning retiree welfare benefits; and (2) the Western District of Pennsylvania, as compared to the Northern District of Illinois, has a substantially greater nexus to the parties and the dispute.

---

[8] Plaintiffs make other arguments why the Court should depart from the first-filed rule, such as that FreightCar "seeks to game the system to avoid a forum and a courtroom that it deemed less favorable to its cause than the Chicago court." (ECF No. 20 at 19). Because the Court will depart from the first-filed rule based on the extraordinary circumstances of this case, it will not consider the merits of Plaintiffs' other arguments.

1. **The 2005 Settlement Agreement**

It is well settled that a "valid forum selection clause may serve as an 'extraordinary circumstance' that would justify a departure from the first-filed rule." *Samuel T. Freeman & Co. v. Hiam*, CIV.A. 12-1387, 2012 WL 2120474, at *7 (E.D. Pa. June 11, 2012) (citing *Pep Boys, Manny, Moe & Jack v. Am. Waste Oil Servs., Corp.*, CIV. A. 96-CV-7098, 1997 WL 367048, at *7–8 (E.D. Pa. June 25, 1997); *Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 400 (E.D. Pa. 2005)). As mentioned above, the 2005 settlement agreement gave the *Deemer* and *Britt* plaintiffs the right to litigate in the Western District of Pennsylvania if FreightCar failed to make welfare contributions after November 30, 2012. (ECF No. 1-3 ¶ 16(f)). As of 2008, that agreement also applied to the *Sowers* plaintiffs. (ECF No. 1-2 ¶ 7).

FreightCar appropriately notes that the forum selection language is permissive in that the 2005 agreement does not preclude the parties from filing suit in another forum. *See, e.g.*, *Samuel T. Freeman & Co.*, 2012 WL 2120474 at *7 (discussing "consent to jurisdiction" clauses as permissive and allowing parties to "air any dispute in a specific court without requiring them to do so."). FreightCar further argues that Plaintiffs did not "re-file" the *Deemer* or *Britt* litigations because retirees filed suit in the Johnstown Division rather than the Pittsburgh Division. (ECF No. 32 at 7).[9] Regardless of whether the forum selection language is binding on the parties or whether retirees technically "re-filed" the *Deemer* and *Britt* cases, the 2005 agreement involves the same underlying

---

[9] In the 2005 agreement, the parties did not clearly explain what constitutes "re-filing with the Court the *Britt* and *Deemer* litigations." (ECF No. 1-3 ¶ 16(f)). The parties, however, clearly defined "Court" as the Western District of Pennsylvania.

11

dispute and the same parties now before this Court. The term "Court" within that agreement was defined as the Western District of Pennsylvania. The language is thus strongly indicative of the parties' intentions to litigate the current dispute in the Western District of Pennsylvania and constitutes an extraordinary circumstance sufficient to justify a departure from the first-filed rule.

### 2. Nexus between the Western District and the Current Dispute

As detailed above, this case stems from three underlying class actions litigated in the Western District of Pennsylvania. Those plaintiffs—all of whom are retirees of the Johnstown facility—now assert that they are entitled to retiree welfare benefits based on collective bargaining agreements negotiated in the Western District of Pennsylvania. Based on these facts, and others, this district has a far greater nexus to the instant dispute than the Northern District of Illinois, a factor that the Third Circuit has recently endorsed in departing from the first-filed rule. *See Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 206 (3d Cir. 2012).

In *Honeywell*,[10] a corporation and its retirees disputed the corporation's obligations toward retiree benefits. *Id.* at 203. Honeywell and its business predecessors entered into collective bargaining agreements with a union headquartered in Michigan. The union negotiated on behalf of Honeywell's employees in California, Indiana, Michigan, New Jersey, and New York. *Id.* Although Honeywell resided in New Jersey, and more of the affected retirees resided in New Jersey than in Michigan, the district court dismissed

---

[10] The *Honeywell* district court decision is accessible at CIV.A. 11-04250 WJM, 2011 WL 6293032 (D.N.J. Dec. 16, 2011).

12

Honeywell's first-filed action in favor of the retirees' suit in Michigan. The district court reasoned the following:

> The parties' negotiations have taken place against the backdrop of Sixth Circuit precedent for over half a century. The . . . CBAs [collective bargaining agreements] have been negotiated in the Eastern District of Michigan for more than 50 years, and the . . . negotiations giving rise to this dispute took place in Michigan. The healthcare retirement language that is central to this dispute was negotiated in that District. Furthermore, the [Union] has been headquartered in the Eastern District of Michigan for more than 75 years and Honeywell's predecessors were headquartered in Michigan for decades. Finally, the office of Honeywell's chief negotiator (who negotiated the 2003, 2007, and 2011 CBAs) is located in the Eastern District of Michigan. Thus, the Court finds that Michigan has a stronger connection to the dispute.

502 F. App'x 201, 204 (3d Cir. 2012) (citing 2011 WL 6293032 at *7). The district court also found evidence that Honeywell had engaged in forum shopping. The Third Circuit affirmed, finding the district court had appropriately considered that "Michigan had a greater nexus to the dispute than New Jersey, and that Honeywell's decision to sue before providing the required statutory notice suggested that it was attempting to beat the Union to the courthouse." 502 F. App'x at 206.

Here, other than FreightCar's headquarters being located in Chicago, Illinois, the Northern District of Illinois has no connection to this dispute. (ECF No. 18-2 ¶ 2). By contrast, all of the Plaintiffs worked at a facility in Johnstown, Pennsylvania. FreightCar maintains a facility in Johnstown. All three previous class actions were litigated in the Western District of Pennsylvania. Not only is the USW headquartered in this district, of the 656 retirees sued by FreightCar in Illinois, at least 635 reside in Pennsylvania. (ECF No. 20 at 17). As well, many USW representatives involved in negotiating the pertinent collective bargaining agreements currently reside in the Johnstown area. (*See id.* at 18).

13

In view of the Western District of Pennsylvania's strong connection to this dispute, the Court finds that departing from the first-filed rule is warranted. This finding comports with the principles that support the first-filed rule and is the "right and equitable" outcome given the extraordinary circumstances in this case. *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 977 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). FreightCar's request to dismiss this action based on the first-filed rule will be denied.

### B. Transfer of Venue to the Northern District of Illinois

FreightCar alternatively requests that this case be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . ." In determining whether to grant a motion to change venue, a district court is ordinarily "vested with wide discretion," *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973), and must weigh all relevant factors bearing on whether the litigation "would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The moving party bears the burden of establishing that a change of venue is warranted, and the plaintiff's "choice of a proper forum is a paramount consideration in any determination of a transfer request." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

In this case, under the 2005 settlement agreement, the parties agreed to litigate in the Western District of Pennsylvania if FreightCar failed to provide welfare benefit contributions after November 30, 2012. (ECF No. 1-3 ¶ 16(f)). As the United States

Supreme Court recently explained, "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis . . ." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, --- S. Ct. ---, No. 12-929, 2013 WL 6231157, at *11 (U.S. Dec. 3, 2013). "Only under extraordinary circumstances" should a district court not enforce a valid forum selection clause. *Id.* Furthermore, in determining the proper forum, a district court should not consider the private interests of the parties: "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at *12. Courts may nonetheless consider "public-interest factors," including "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at *11 n.6 (internal citations omitted).

Transferring this matter to the Northern District of Illinois does not serve the interests of justice. Plaintiffs chose to file suit in this district, and the parties contractually agreed to litigate this dispute in the Western District of Pennsylvania. FreightCar does not suggest that the 2005 settlement agreement was the result of fraud, nor has it shown that enforcing the agreement would violate public policy. *See MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 846 (3d Cir. 2003) (citations omitted) (discussing grounds for invalidating a forum selection clause).

Further counseling in favor of denying this transfer request is the public interest factor in having localized controversies decided at home. As provided above, the case involves retirees who allege that they are entitled to welfare benefits under collective

bargaining agreements negotiated in this district. FreightCar maintains an administrative office in this district; the USW is headquartered in this district; and the plant where all of the retirees worked was located in this district. As District Judge Terrence F. McVerry aptly described in *Sowers*, the dispute before this Court unquestionably involves "employer/employee rights and relationships exclusive to Defendant's facility and employees in Johnstown." (ECF 21-1 at 2).[11] Accordingly, the Court will deny FreightCar's request to transfer this case to the Northern District of Illinois.

C. **Stay of Proceedings**

FreightCar further requests a stay of proceedings pending a determination from the Northern District of Illinois as to the most appropriate venue. In determining whether to stay civil proceedings, the Court must exercise judgment and weigh competing interests. *Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–255 (1936)). Relevant factors include

> (1) the interest of the plaintiff in proceeding expeditiously with the civil action as balanced against the prejudice to the plaintiff from delay; (2) the burden on defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest.

---

[11] FreightCar briefly argues that the "possibility of bias [in this case] is real and weighs heavily in favor of transfer." (ECF No. 18 at 21). FreightCar grounds this view in "negative media coverage" concerning the 2008 closure of the Johnstown plant resulting in substantial layoffs. (*Id.*). It is true that "adverse pretrial publicity can create such a presumption of prejudice in a community." *Patton v. Yount*, 467 U.S. 1024, 1031 (1984). Nevertheless, "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Skilling v. United States*, 130 S. Ct. 2896, 2916 (2010) (quoting *Nebraska Press Ass'n v. Stuart*, 477 U.S. 539, 554 (1976)). Cases that rise to the level of transforming even the most careful *voir dire* into an exercise in futility are "exceedingly rare." *Flamer v. State of Del.*, 68 F.3d 736, 754 (3d Cir. 1995) (citation omitted). FreightCar cites just one news article to support its position. Not only is the argument premature, it is unsupported based on the evidence presented.

*Shirsat v. Mut. Pharm. Co., Inc.*, CIV.A 93-3202, 1995 WL 695109, at *1 (E.D. Pa. Nov. 21, 1995) (citations omitted). The burden is on the party requesting the stay to "make out a clear case of hardship or inequity in being required to go forward . . ." *Landis*, 299 U.S. at 255.

FreightCar primarily justifies a stay under the first-filed rule, arguing that the Northern District of Illinois should determine the appropriate forum in this case. As provided above, however, extraordinary circumstances justify a departure from the first-filed rule. Furthermore, the Court finds in its discretion that a stay is not warranted because it is in the interests of all parties to proceed with this litigation as expeditiously as possible. Finally, FreightCar has not met its burden under *Landis* in showing hardship or inequity in moving forward with this litigation. Thus, FreightCar's request for a stay will be denied.

### D. Transfer of Venue to the Pittsburgh Division

As its final requested relief, FreightCar seeks a transfer of this case to the Pittsburgh Division of the Western District of Pennsylvania under 28 U.S.C. § 1404(b) and Local Rules 40(d) and (e). Section 1404(b) provides that, "[u]pon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." When determining whether to transfer a case between divisions (an "intradistrict transfer"), courts are guided by the same factors that apply to transfers between districts (an "interdistrict transfer"). *See Desir v. Hovensa, L.L.C.*, CIVIL 2007/97, 2012 WL 3191959, at *1 (D.V.I. Aug. 7, 2012). "At a

minimum the Court must consider whether a transfer would be convenient to the parties and witnesses and in the interest of justice." (*Id.*) (citations omitted).

FreightCar supports this request by arguing that the instant dispute "more closely resembles" *Deemer* and *Britt*. (ECF No. 18 at 23). Retiree plaintiffs filed those suits in the Pittsburgh Division of the Western District of Pennsylvania, and the clerk assigned them to District Judges Robert J. Cindrich and David S. Cercone, respectively. FreightCar contends that *Sowers* "never addressed whether retiree medical benefits vested and could not be changed" and that the "*only* real connection between this case and *Sowers* is that the members of the *Sowers* class were permitted to participate in the *Britt* and *Deemer* settlement." (*Id.*). Accordingly, FreightCar argues that transfer to the Pittsburgh Division would "further the expeditious resolution of this dispute." (*Id.*)

Local Rule 40(e) provides that a judge receiving a later case "may transfer the matter to the Judge to whom the earlier related case was assigned." Under Local Rule 40(d), a case is deemed related if it "involves the same issue of fact" or "grows out of the same transaction" as an earlier action. Judge Cindrich is no longer a judge in the Western District of Pennsylvania, and Judge Cercone issued only one substantive decision certifying the *Britt* class before the case settled. Although *Britt* and *Deemer* are related cases, FreightCar has not shown that the Pittsburgh Division would handle this matter more expeditiously. The Court will thus decline a transfer on this ground.

The Court further finds that a transfer to the Pittsburgh Division is not warranted under 28 U.S.C. § 1404(b) because it is not in the interests of justice or the convenience of the parties to do so. Plaintiffs have chosen to file suit in the Johnstown Division, not the Pittsburgh Division, and the language of the 2005 settlement agreement does not preclude

18

Plaintiffs from filing suit in this division. FreightCar maintains an administrative office in Johnstown, not Pittsburgh, and Defendant JAC is based in Johnstown. Moreover, four of the five Plaintiff class representatives reside in Cambria County, Pennsylvania. Therefore, the Johnstown Division is the most appropriate venue for this dispute.[12]

## VI. CONCLUSION

For the foregoing reasons, FreightCar's motion to dismiss, transfer, or stay proceedings (ECF No. 17) will be denied.

An appropriate order follows.

---

[12] Local Rule 3 further substantiates this view. Local Rule 3 provides, in pertinent part, that "[s]hould it appear from the complaint . . . that the claim arose OR any plaintiff or defendant resides in: Bedford, Blair, Cambria, Clearfield or Somerset County, the Clerk of Court shall give such complaint . . . a Johnstown number and it shall be placed on the Johnstown docket." As exhaustively detailed in this memorandum, the claim at issue arose from events occurring in Johnstown. Furthermore, four of the five class representatives reside in Cambria County, and Defendant JAC is based in Cambria County.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY J. ZANGHI, KENNETH J. SOWERS, DOMINIC MCCUCH, JAMES HOHMAN, and DARRELL SHETLER, *on behalf of themselves and others similarly situated*; UNITED STEEL, PAPER AND FORESTRY, RUBBER MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC,<br><br>Plaintiffs,<br><br>v.<br><br>FREIGHTCAR AMERICA, INC.; JOHNSTOWN AMERICA CORPORATION; and JOHNSTOWN AMERICA CORPORATION USWA HEALTH & WELFARE PLAN,<br><br>Defendants. | CIVIL ACTION NO. 3:13-146<br><br>JUDGE KIM R. GIBSON |

## ORDER

NOW, this 14th day of January 2014, this matter coming before the Court on Defendants' motion to dismiss, transfer, or stay proceedings (ECF No. 17), upon consideration of the parties' briefs and attached exhibits (*see* ECF Nos. 18, 20, 32), and for the reasons provided in the attached memorandum,

**IT IS HEREBY ORDERED** that Defendants' motion (ECF No. 17) is **DENIED**.

BY THE COURT:

/s/ Kim R. Gibson

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**