IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| **ANTHONY J. ZANGHI,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **FREIGHTCAR AMERICA, INC.,** *et al.*, <br><br> **Defendants.** | No.: 3:13-CV-00146 <br><br><br><br><br><br> Hon. Kim R. Gibson |

**DECLARATION OF CHARLES HOWARD
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Charles Howard, declare as follows:

1. I am over eighteen (18) years of age and am fully competent to make this declaration. If called upon as a witness, I could and would competently testify in open court to the facts set forth below, as I know each to be true based on my own personal knowledge.

2. I have been employed by FreightCar America, Inc. ("FreightCar") and worked for the Company at its Johnstown, Pennsylvania offices since February 3, 1992. From approximately 1999 until 2011, I served as Manager of Human Resources. In 2011, I became the Director of Human Resources.

3. In my role as the Director of Human Resources, I have become familiar with the collective bargaining agreements between FreightCar and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("the USW"). True and correct copies of the collective bargaining agreements are attached to my declaration as the following exhibits:

- Howard Declaration Exhibit A. Agreement Between Johnstown America Corporation and United Steelworkers of America AFL-CIO, Production and Maintenance Local No. 2635, dated October 28, 1991.

- Howard Declaration Exhibit B. Agreement Between Johnstown America Corporation and United Steelworkers of America AFL-CIO, Production and Maintenance Local No. 2635, dated October 29, 1994.

- Howard Declaration Exhibit C. Agreement Between Johnstown America Corporation and United Steelworkers of America AFL-CIO, Production and Maintenance Local No. 2635, dated November 1, 1997 to October 31, 2001.

- Howard Declaration Exhibit D. Agreement between Johnstown America Corporation and United Steelworkers of America AFL-CIO, CLC on behalf of Local Union 2635, dated February 25, 2005 to May 15, 2008.

- Howard Declaration Exhibit E. FCA/Union Settlement Agreement (2008 Plant Shutdown Agreement).

4. I have participated on behalf of FreightCar in all of the labor negotiations relating to the Johnstown Plant since approximately 2001. These negotiations have included the 2001-2002 negotiations, the negotiations that led to the 2005 collective bargaining agreement, and the negotiations that preceded the 2008 plant shutdown agreement.

5. FreightCar and the USW began negotiations in September 2001 to negotiate a successor agreement to the 1997 CBA. FreightCar informed the USW that its primary goal during these negotiations was to reduce trailing benefits and legacy costs, such as retiree welfare benefits.

6. On October 25, 2001, FreightCar tendered its first economic proposal to the USW. A true and correct copy of this proposal is attached as Howard Declaration Exhibit F. Paragraph (9) of FreightCar's first economic proposal provided that if Bethlehem failed to reimburse FreightCar for certain retirees' medical benefits ("the reimbursable retirees"), the cost of such benefits would become the responsibility of the individual reimbursable retirees. For all other retirees ("the non-reimbursable retirees"), Paragraph (8) provided that FreightCar's benefits contributions toward their retiree healthcare would be capped at the premium rates in effect as of January 1, 2002.

7. Upon receipt of FreightCar's first economic proposal, the USW briefly reviewed each of its provisions, including the provisions relating to retirees' welfare benefits. The USW responded that it did not know if it was authorized to negotiate on behalf of past retirees. The USW informed FreightCar that it would discuss the issue with its legal counsel.

8. On November 14, 2001, the parties met and reviewed each of the items in FreightCar's first economic proposal. The USW asked for clarification with respect to FreightCar's proposal regarding the elimination of benefits for the reimbursable retirees and its

proposed caps on premium contributions for the non-reimbursable retirees. The USW also gave FreightCar an information request for the names of all of the retirees that would be affected by Bethlehem's bankruptcy. When FreightCar asked whether the USW represented these retirees, the USW responded by stating that it did not. Attached to my declaration as <u>Howard Declaration Exhibit G</u> are true and correct copies of bargaining notes taken by the parties during the November 14, 2001 session.

9. FreightCar also explained during the parties' November 14, 2001 negotiations that the cost associated with the reimbursable retirees' benefits was approximately $1.2 million per year. FreightCar informed the USW that if it were required to bear these costs, the negotiations would be impacted. The November 14, 2001 bargaining notes attached as Exhibit G also reflect this discussion.

10. On November 28, 2001, FreightCar tendered a new offer. FreightCar's "Fourth Draft of Employer Proposal for Agreement" ("the Fourth Draft Proposal"), which was its first plenary proposal, again included provisions designed to reduce the cost of retiree medical benefits. FreightCar's Fourth Draft Proposal for Agreement is attached as <u>Howard Declaration Exhibit H</u>. Article XIX, Section 1(f) of the Fourth Draft Proposal provided with respect to the non-reimbursable retirees that:

> All current and future retirees not eligible to retire under the eligibility criteria as described in the 1991 Agreement of Purchase and Sale will be provided a managed care healthcare plan, whereby the Employer will make the premium contributions at the rates in effect as of January 1, 2002, with any increases in the costs of such premiums being the responsibility of the individual retirees.

Article XIX, Section 1(g) provided with respect to the reimbursable retirees that:

> The Employer will continue its contributions toward existing and future retiree healthcare benefits for retirees for whom the cost of such coverage is the responsibility of Bethlehem Steel under the 1991 Agreement of Purchase and Sale at the rates in effect as of January 1, 2002. **If Bethlehem Steel fails to fulfill its**

> **responsibility for these benefits, the costs of such benefits will be the responsibility of the individual retirees.**

11.     During the parties' meeting on November 28, 2001, after Freightcar tendered its Fourth Draft Proposal, it again explained that the reimbursable retirees' benefits presented an unanticipated $1.2 million per year cost.  FreightCar stated that if the USW insisted upon requiring FreightCar to continue these payments, the USW would need to agree to $1.2 million per year in wage and benefit concessions.  Copies of the bargaining notes reflecting the November 28, 2001 negotiations are attached as Howard Declaration Exhibit I.

12.     The following day, November 29, 2001, the USW and FreightCar reviewed each of the proposals set forth in FreightCar's Fourth Draft Proposals.  With respect to Sections 1(f) and 1(g), the USW informed FreightCar that it did not believe that past retirees' benefits were a proper subject of collective bargaining.  The USW asked that FreightCar remove Sections 1(f) and 1(g) from the proposed draft agreement.  FreightCar agreed to take the proposals relating to retirees' benefits out of the agreement, but it informed the USW that it planned to terminate these benefits for the reimbursable retirees.  The USW expressly confirmed that it understood what FreightCar's intentions were.  True and correct copies of the parties' November 29, 2001 bargaining notes are attached as Howard Declaration Exhibit J.

13.     The parties were unable to reach an agreement based on the draft contract tendered to the USW on November 28, 2001.  Therefore, on December 18, 2001, FreightCar tendered its "Fifth Draft and Final Employer Proposal for Agreement."  A copy of FreightCar's Fifth Draft and Final Employer Proposal for Agreement is attached as Howard Declaration Exhibit K.  FreightCar revised this proposal to reflect the USW's insistence that the retirees' benefits were not a proper subject of collective bargaining.  In particular, Section 1 of Article

XIX was revised to remove all references to the then-current retirees.  FreightCar's Final Proposal stated as follows:

> **All current employees** who are not eligible to retire under the eligibility criteria as described in the 1991 Agreement of Purchase and Sale will be provided a managed care healthcare plan, whereby the Employer will make the premium contributions at the rates in effect as of October 31, 2001. . . . Any increases in the costs of such premiums beyond one hundred fifty percent (150%) will be the responsibility of the individual retiree.
>
> * * * * *
>
> **For current employees** who retire under the eligibility criteria as described in the 1991 Agreement of Purchase and Sale, the Employer will pay the costs of healthcare and life insurance coverage only so long as Bethlehem Steel reimburses the Employer for those costs.  If Bethlehem Steel fails to fulfill its responsibility for these benefit costs, such [costs] will be the responsibility of the individual retirees.

14.  FreightCar explained that these provisions had been revised to refer only to the retiree benefits that would be offered to individuals retiring in the future under this collective bargaining agreement.  The USW did not object to this proposal or insist upon negotiating with respect to the past retirees' benefits.  However, the USW did reject FreightCar's Final Proposal.

15.  FreightCar told the USW that it believed the parties were at an impasse and that the Final Proposal should be presented to the bargaining unit for a vote.  After the Final Proposal was rejected, FreightCar informed the USW that it intended to implement its final offer effective January 21, 2002.  The USW responded by filing a charge with the National Labor Relations Board, which alleged that FreightCar had bargained in bad faith.

16.  On March 6, 2002, FreightCar wrote to the reimbursable retirees to inform them that FreightCar could "no longer continue to absorb the cost of their "post-retirement health and life insurance coverage" and that it would "discontinue paying these costs as of May 1, 2002.  A true and correct copy of this letter is attached as <u>Howard Declaration Exhibit L</u>.

17. In May of 2002 FreightCar amended the medical plan SPD set forth in the JAC Guide to eliminate the retiree medical benefits for the reimbursable retirees. FreightCar also amended the medical plan SPD to place caps on the premium contributions it would make for the non-reimbursable retirees.  A copy of this plan amendment is attached as <u>Howard Declaration Exhibit M</u>.  The resolution amending the JAC guide provided as follows:

> Effective May 1, 2002, coverage shall not be provided to reimbursable retirees unless Bethlehem Steel Corporation contemporaneously reimburses the company for the cost of such coverage.  For example, while Bethlehem Steel Corporation is in bankruptcy and fails or refuses to reimburse the company, no coverage shall be provided to reimbursable employees except to the extent that the company can arrange replacement coverage and the reimbursable retiree pays the full cost of such coverage.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 15, 2014

*Charles Howard*

Charles Howard