IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| **ANTHONY J. ZANGHI,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **FREIGHTCAR AMERICA, INC.,** *et al.*, <br><br> Defendants. | No. 3:13-CV-00146 <br><br> Hon. Kim R. Gibson |

### MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT RULING

In denying the parties' cross-motions for summary judgment, this Court found there to be a material issue of disputed fact as to when FreightCar's obligations under Side Letter 22 were discharged. In particular, the Court found it to be disputed whether Side Letter 22 (which was signed in 1991) was removed from the collective bargaining agreement in 1994 or 1997.

FreightCar moves this Court for reconsideration. Although FreightCar respectfully disagrees with the Court's assessment of the historical evidence regarding when Side Letter 22 was formally withdrawn, the point of this motion is not to relitigate issues that this Court has already decided. Rather, in FreightCar's view, there are two additional issues—not addressed by the Court's ruling on summary judgment—that moot the dispute that this Court would otherwise require a trial to resolve.

*First*, although the Court found there to be a dispute as to when Side Letter 22 dropped out of the CBA, it does not appear to have determined whether Side Letter 22—by its written terms—created a continuing obligation. Because the text of Side Letter 22 is unambiguous in requiring a one-time mirroring process—and FreightCar was obligated to provide a draft of a

plan complying with that mirroring process *within 60 days of closing*—there is no need for the Court to decide when Side Letter 22 was formally withdrawn.  The upshot of the text of Side Letter 22 is that the parties were required to negotiate the terms of a plan that mirrored the Bethlehem PHMB in material respects.  FreightCar and the Union discharged that obligation by crafting the new plan, which required FreightCar to continue benefits "subject to collective bargaining."  There is no dispute that FreightCar ultimately eliminated certain future benefits "subject to collective bargaining" by bargaining to impasse.  So irrespective of when it was formally withdrawn, Side Letter 22 posed no obstacle to FreightCar's actions and this Court should enter summary judgment in favor of FreightCar.

*Second*, the Court acknowledged that Side Letter 22 was removed from the collective bargaining agreement no later than 1997.  The Court nevertheless deemed it possible that Side Letter 22 might bear on FreightCar's obligations to employees who retired *after* the 1997 CBA entered into effect.  But the Court appears not to have accounted for the zipper and integration clauses of the 1997 CBA, which provide that only enumerated agreements—a list that does *not* include Side Letter 22—remain part of the CBA.  So Side Letter 22 was unambiguously *not* a part of the CBA for any FreightCar employee who retired after the 1997 CBA went into effect.  As such, because it is undisputed that FreightCar changed future benefits "subject to collective bargaining," as required by the 1997 CBA, FreightCar is entitled to summary judgment—at a minimum—as to any employee who retired after 1997.

## ARGUMENT

This Court possesses inherent power to reconsider interlocutory orders "when it is consonant with justice to do so."  *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973); *Dayoub v. Penn-Del Directory Co.*, 90 F. Supp. 2d 636, 637 (E.D. Pa. 2000).  Reconsideration is

warranted "to correct manifest errors of law or fact or to present newly discovered evidence." *Dayoub*, 90 F. Supp. 2d at 637 (quoting *Confer v. Custom Eng'r Co. Employee Health Benefit Plan*, 760 F.Supp. 75, 77 (W.D. Pa. 1991), *aff'd in part and dismissed in part on other grounds*, 952 F.2d 41 (3d Cir. 1991)); *see also Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

Here, reconsideration is warranted because the Court committed two manifest errors of law. First, the Court extended the scope of Side Letter 22 beyond its text. Second, even if Side Letter 22 remained in effect after the JAC Guide was created and finalized, it was expressly excluded from the 1997 CBA in light of the zipper and merger clauses.[1] Moreover, reconsideration serves the interests of justice because many of the premises identified by the Court to be undisputed or resolvable as a matter of law are, in fact, disputed questions of fact for trial.

### A. FreightCar Is Entitled to Summary Judgment Based on the Text of Side Letter 22.

The Court's opinion on summary judgment turned on its understanding of Side Letter 22. Although the Court assessed the evidence as to when the Side Letter was withdrawn, it did not consider the temporal scope of the obligations created by the plain language of the Side Letter. Instead, this Court resorted to extrinsic evidence to determine how long the obligations of Side Letter 22 remained effect. But this Court should not have used extrinsic evidence to alter the scope of an obligation provided by the Side Letter's unambiguous language. Resort to extrinsic evidence to interpret a contract is appropriate only when the provision is ambiguous or the extrinsic evidence objectively establishes "that apparently clear contract language means

---

[1] The JAC Guide was identified as the summary plan description, but it governed as the plan because there was no other formal instrument. *See Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 378 (3d Cir. 2003).

3

something different from what it seems to mean." *Bock v. Computer Assocs. Int'l, Inc.*, 257 F.3d 700, 707 (7th Cir. 2001) (quoting *AM Int'l, Inc. v. Graphic Mgmt. Assoc., Inc.*, 44 F.3d 572, 575 (7th Cir. 1995)); *see also Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011). Accordingly, FreightCar is entitled to summary judgment based on the unambiguous text of Side Letter 22, which imposed on FreightCar a one-time obligation to create a suitable replacement for the Bethlehem PHMB.

Side Letter 22 is unambiguous in imposing on FreightCar a one-time obligation:

> Johnstown America Corporation will ***create*** mirror bargaining unit employee benefit plans identical in all material respects to the Bethlehem plans they replace. ***Within 60 days*** after closing of the Johnstown America Corporation/Bethlehem sale, Johnstown America Corporation will forward to the Union for review and comment draft copies of such plans, and Johnstown America Corporation and the Union agree to use their best efforts to ***finalize*** such plans, subject to IRS approval if appropriate, ***within 120 days*** of closing.

ECF No. 119 ¶ 20 (emphases added). Side Letter 22 contemplated that the mirrored plan would be "create[d]" within 60 days after the closing of the JAC/Bethlehem sale and "finalize[d]"—with the input of the Union—within 120 days of closing. Indeed, Plaintiffs' Complaint admits as much. ECF No. 1 ¶ 44 ("***After signing the Mirroring Agreement, JAC discharged the obligation it imposed to 'create' welfare benefit programs***, including retiree medical and life insurance benefits to retiring employees, which '*mirrored*' Bethlehem's welfare programs in '*all material respects*.'") (first emphasis added).[2]

---

[2] At most, plaintiffs would have had a claim under Side Letter 22 if that letter was breached when FreightCar "create[d]" and "finalize[d]" the 1993 JAC Guide without mirroring the plans in all material respects. Such a claim likely would not have succeeded; the JAC Guide was explicitly approved by the Union as fulfilling Side Letter 22's obligations. But in any event, if plaintiffs tried to make that argument today, it would raise a serious timeliness issue. FreightCar is therefore entitled to judgment on Plaintiffs' LMRA claim.

There is no room for extrinsic evidence on the question of whether Side Letter 22 imposes a *continuing* obligation. By its terms, Side Letter 22 imposed a one-time obligation to "create" and "finalize." Under that obligation, FreightCar was required to create a new plan mirroring the material elements of the Bethlehem PHMB within sixty days of closing.

Plaintiffs' ERISA claim must be based on the language of the *FreightCar* plan (and not the language of the Bethlehem PHMB, which was never adopted by FreightCar).[3] *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93 (3d Cir. 2001) (applying Pennsylvania law) ("A party may use extrinsic evidence to support its claim of latent ambiguity, but this evidence must show that some specific term or terms in the contract are ambiguous; it cannot simply show that the parties intended something different that was not incorporated into the contract."). Because the FreightCar plan provided that benefits may be amended or terminated, at any time, "subject to collective bargaining"—a standard that FreightCar satisfied, based on undisputed evidence, by bargaining to impasse, FreightCar is entitled to judgment on the ERISA claims, as well.

**B.      FreightCar Is Entitled to Summary Judgment on Claims Arising after 1997.**

In the alternative, even if there was a need for trial to determine whether individuals who retired prior to 1997 were entitled to permanent benefits, there is an independent ground for granting judgment to FreightCar as to individuals who retired after the 1997 CBA came into effect.

In denying FreightCar's motion for summary judgment, this Court found "a dispute of fact as to whether the parties agreed that FreightCar's obligation under Side Letter 22 had been

---

[3] If plaintiffs wanted the Bethlehem PHMB language or another provision providing more robust retiree protection, they had the obligation to bargain for it and have it placed explicitly in the plan. *See Felker v. USW Local 10-901*, No. 13-7101, 2015 WL 1867910, at *4 (E.D. Pa. Apr. 23, 2015)

satisfied, or whether the parties intended the obligation under Side Letter 22 to govern past 1997." (ECF No. 161, at 47-48) The Court maintained that FreightCar had no right to terminate retiree welfare benefits unilaterally under Side Letter 22. The Court further found "that the factual evidence is ambiguous regarding FreightCar's continuing obligations under Side Letter 22." *Id.* at 48.

That analysis fails to account for two critical provisions of the 1997 CBA—its integration and zipper clauses, which provide:

> **This Agreement and the documents expressly referred to herein are the only documents by which the parties intend to be contractually or statutorily bound.** Any document, not expressly referred to herein that may be brought forth by either the Company or the Union after ratification of this Agreement may be included as part of this Agreement, provided both parties agree to its inclusion. **All Appendices from previous agreements have either been consolidated into Articles of this Agreement or in any event, are no longer part of this Agreement.**
>
> Documents expressly referred to include:
>
> > Job Descriptions
> > Local Issues
> > Weekly Unit Scheduling Practices and Overtime Policies
> > Weekly and Quarterly Pool Agreement
> > Flat Rate Agreement
> > Summary Plan Descriptions
> > **1991 Side Letters 4, 5, 13, 26**
> > 1997 Side Letters 1, 2, 3
>
> **The Company and Union waive the right to bargain with each other for** the duration of this Agreement for a modification of any provision of this Agreement, or for **the acquisition of any additional economic benefits**, or for the limitation of any management right, prerogative or privilege.

1997 CBA, Article XXI (ECF No. 121-20, at 39) (emphases added).

The Supreme Court held in *Tackett v. M&G Polymers, USA, LLC*, 135 S. Ct. 935 (2015), that "[w]here the words of the contract are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id*. at 933 (quoting 11 R. Lord,

Williston on Contracts § 30:6, at 108 (4th ed. 2012). Additionally, the Circuit Courts have recognized that "the added presence of a merger clause is further strong evidence 'that the parties intended the writing to be the complete and exclusive agreement between them.'" *Anheuser-Busch, Inc. v. Local Union No. 744, International Brotherhood of Teamsters*, 280 F.3d 1133, 1141 (7th Cir. 2002) (quoting *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1206 (7th Cir. 1998)). Here, the 1997 CBA states explicitly that the agreement and the enumerated documents are the only documents by which the parties agree to be contractually bound. Moreover, the zipper clause waived any further bargaining on "the acquisition of additional economic benefits" for the duration of the CBA. Where a contract plainly indicates that it is the only agreement and that all prior agreements have been merged into the current contract or are no longer binding, the contract is completely integrated. *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 234 (3d Cir. 2001).

In finding that there is a question of fact about whether Side Letter 22's obligations continued beyond 1997, the Court failed to give effect to the merger clause. This Court wrote, "FreightCar's argument that it was not required to bargain to impasse with the Union over retiree benefits is premised on the notion that they had agreed with Plaintiffs no longer to be bound by Side Letter 22 and the Continuation of Coverage language in the Bethlehem PHMB, and were thus free to terminate the benefits only subject to collective bargaining or subject to any contrary provision in the collective bargaining agreement." (ECF No. 161, at 50) But FreightCar had *already* demonstrated that it was not bound by Side Letter 22 after producing a completely integrated contract in 1997 that contained no reference to Side Letter 22.[4] At that point, it became the Union's responsibility to provide overwhelming evidence sufficient to negate the

---

[4] And this assumes *arguendo* that Side Letter 22 even remained operative through 1997.

"strong evidence" of integration provided by the merger clause. *See Local Union No. 744*, 280 F.3d at 1141. The extrinsic evidence cited in the summary judgment opinion is not close to satisfying that burden.

In fact, the overwhelming evidence pointed against incorporating Side Letter 22. Of the twenty-seven side letters to the 1991 agreement, the 1997 CBA incorporates four: letters 4, 5, 13, and 26. Notably missing is Side Letter 22; the maxim *expressio unis est exclusio alterius* applies here. *See Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179 (1st Cir. 1995) ("While this interpretive maxim is not always dispositive, it carries weight; and when, as now, there is absolutely nothing in the agreement's text that hints at some additional item lurking beyond the enumerated list, we see no reason why the maxim should not be controlling."). Moreover, both the Union and FreightCar are sophisticated parties who jointly drafted the contract language and, thus, could be expected to accurately incorporate all of the actual agreements. *See Felker v. USW Local 10-901*, No. 13-7101, 2015 WL 1867910, at *4 (E.D. Pa. Apr. 23, 2015) ("Plaintiffs' Union was involved in the negotiations that established the Plan, and could have bargained for a more detailed delegation procedure to be included in the Plan."). In such a carefully negotiated contract, the merger clause should not be casually disregarded.

When the 1997 CBA is interpreted as an integrated contract subject to a merger clause—as it must be—FreightCar's obligation as to retiree benefits are governed by Appendix 9 (ECF No. 121-20, at 48), which provides that insurance benefits shall be governed by the JAC Guide. *See Tackett*, 135 S. Ct. at 933 ("Where the words of the contract are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.") (quoting 11 R. Lord, Williston on Contracts § 30:6, at 108). In turn, the JAC Guide provides, "[s]ubject to collective bargaining the company reserves the right to end, suspend, or amend the plans at any

time, in whole or in part." Here, the 1997 CBA extended benefits "[s]ubject to collective bargaining." Even assuming FreightCar had an obligation to bargain over current retirees benefits (which, as this Court noted, the Union itself denied), that requirement was fulfilled for both past and future retirees in 2001, when the parties bargained to impasse over retiree welfare benefits, which allowed FreightCar to terminate the benefits unilaterally.[5]

There is no question that, at a minimum, workers who retired under the 1997 CBA or thereafter are ineligible for any benefits that might arise under Side Letter 22. This Court should grant reconsideration to give legal effect to the merger and zipper clauses, pursuant to which Side Letter 22 could not have imposed any obligations after the 1997 CBA went into effect. At a minimum, from that time forward, FreightCar's obligations were governed by the terms of the JAC Guide, which FreightCar fulfilled during collective bargaining in both 2001 and 2005. Accordingly, summary judgment is owed as to these class members.

---

[5] The same holds true for persons who retired under the 2005 CBA and the 2008 plant closing agreement. Both of those agreements identified the JAC Guide as governing retiree welfare benefits. *See* FreightCar Statement of Undisputed Facts ¶¶ 122, 130 (ECF No. 119).

Dated:  April 28, 2015                            Respectfully submitted,


/s/ *Samuel P. Myler*_____
Nancy G. Ross (*pro hac vice*)
Samuel P. Myler (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois  60606
(312) 782-0600 (Telephone)
(312) 701-7711 (Facsimile)

Michael J. Parrish, Jr.
Ronald P. Carnevali, Jr.
SPENCE, CUSTER, SAYLOR, WOLFE & ROSE
P.O. Box 280
400 U.S. Bank Building
Johnstown, Pennsylvania  15907
(814) 536-0735 (Telephone)
(814) 539-1423 (Facsimile)

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who have consented to electronic service have been served with a copy of the foregoing Motion for Continuance of Trial via the Court's CM/ECF system this 28th day of April, 2015.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

                                        */s/ Samuel P. Myler*

                                        Samuel P. Myler