IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| ANTHONY J. ZANGHI, KENNETH J. SOWERS, DOMINIC MCCUCH, JAMES HOHMAN, DARRELL SHETLER on behalf of themselves and others similarly situated, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC,<br><br>    Plaintiffs,<br> v.<br><br>FREIGHTCAR AMERICA, INC., JOHNSTOWN AMERICA CORPORATION, and JOHNSTOWN AMERICA CORPORATION USWA HEALTH & WELFARE PLAN,<br><br>    Defendants. | Civil Action No.: 13-146<br><br>Class Action<br><br>Jury Trial Demanded<br><br>Electronically Filed<br><br>Judge Kim R. Gibson |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

## I. INTRODUCTION

In its summary judgment ruling, the Court concluded that (1) the parties agreed to a continuing obligation to provide retiree benefits "except as the Company and the Union may agree otherwise," and (2) there was a genuine issue of disputed fact as to whether the parties agreed that FreightCar had satisfied that obligation. FreightCar now asks the Court to reconsider these points, terming them "manifest errors of law," and urges the Court to enter summary judgment in its favor and dismiss this action with prejudice. See Dkt. #177-1 (FreightCar Proposed Order). As to the first supposed error, FreightCar admitted in its preliminary injunction opposition and elsewhere that Side Letter 22 contained a continuing obligation, and

the Court has already ruled that FreightCar is bound by its admission.  As to both supposed errors, FreightCar merely seeks to rehash arguments that the Court already has rejected.  The Court should deny reconsideration.

## II.     CONTROLLING STANDARDS

The Court has corrected movants who "mistake reconsideration for reargument" and set forth the standards for reviewing motions to reconsider in its February 5, 2014 Order denying FreightCar's first motion to reconsider (Dkt. #81) ("First Reconsideration Order"):

> District courts have the inherent power to reconsider an interlocutory decision, but "[c]ourts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed.R.Civ.P. 59(e)." A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc., CIV. A. 94-7408, 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001). To be entitled to relief under Rule 59(e), the party seeking reconsideration must establish "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; [or] (3) the need to correct a clear error of law or prevent manifest injustice." Id.; accord Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).
>
> Because courts have a strong interest in the finality of their judgments, a motion for reconsideration is inappropriate to express mere dissatisfaction with a court's previous ruling.  D'Angio v. Borough of Nescopeck, 56 F.Supp.2d 502, 504 (M.D. Pa. 1999).  Furthermore, "a motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F.Supp.2d 588, 606 (M.D.Pa. 2002).  In other words, it is improper on a motion for reconsideration to restyle or rehash issues previously, presented.  Pahler v. City of Wilkes-Barre, 207 F.Supp.2d 341, 355 (M.D.Pa. 2001), aff'd, 31 F. App'x 69 (3d Cir. 2002).
>
> In filing the instant motion for reconsideration, Defendants do not argue that there has been any intervening change in the law, nor do they introduce new evidence previously unavailable. Instead, Defendants ask the Court to reconsider its previous decision on the ground that it might lead to an unjust result; by doing so, Defendants mistake reconsideration for reargument.
>
> The Court finds that no injustice resulted from the Court's previous order (ECF No. 73), and therefore concludes that Defendants have provided no grounds to support reconsideration of the Court's previous judgment.

First Reconsideration Order at 2-3.

## III.   ARGUMENT

A.   **Contrary To FreightCar's First Claimed Error, And As FreightCar Has Admitted In This Litigation, "Side Letter 22 Provided The Continuing Obligation That FreightCar's 'Bargaining Unit Welfare Benefit Plans *Will Mirror* Existing Bethlehem Plans'"**

With respect to the Court's first supposed error, FreightCar asserts that "contrary to the Court's ruling, the express language of Side Letter 22 does not support the Court's finding that FreightCar assumed an ongoing obligation to provide 'mirrored benefits.'"  Motion for Reconsideration (Dkt. #177) at 1.  Nowhere in FreightCar's reconsideration brief or motion does FreightCar acknowledge that it not only repeatedly admitted to precisely this fact, but that the Court already has ruled that FreightCar will be bound by its admission on this point.  FreightCar also fails to acknowledge that it argued this point in its summary judgment briefing, and that the Court resolved the issue against FreightCar in its March 31, 2015 summary judgment ruling ("Summary Judgment Ruling") (Dkt. #161).

In language antithetical to the position FreightCar now asks the Court to adopt, FreightCar admitted as follows in its September 18, 2013 preliminary injunction brief ("FreightCar PI Opp."):  "Regarding FreightCar's obligation to provide medical benefits to the Retirees, **Side Letter 22 provided the continuing obligation that FreightCar's 'bargaining unit welfare benefit plans *will mirror* existing Bethlehem plans….**'"  Dkt. # 58-1 at 6 (italics emphasis in the original; bold emphasis added).  FreightCar reiterated this admission later in its brief, citing "the undisputed fact that before its abrogation in 1997, FreightCar had continuing obligations under Side Letter 22."  FreightCar PI Opp. at 25.  FreightCar continued:

> **The plain language of Side Letter 22 included this continuing obligation**:
> "Johnstown America Corporation bargaining unit welfare plans *will mirror* existing Bethlehem plans and shall be effective immediately after

3

closing….Johnstown America Corporation **shall be responsible** for all benefits payable to its employees or retirees which arise or are based on events which occurred after closing."

Id. (italics emphasis in the original; bold emphasis added).

In its Summary Judgment Ruling, the Court quoted the latter passages from FreightCar's injunction brief.  See Summary Judgment Ruling at 41.  The Court concluded that FreightCar would be "judicially bound by its earlier admissions in pleadings and briefs before this Court." Summary Judgment Ruling at 25; see also Summary Judgment Ruling at 46 ("FreightCar asserted earlier in this litigation that it had continuing obligations under Side Letter 22 that remained until 1997").

Despite the Court's ruling, FreightCar claims that the Court's Summary Judgment Ruling "does not appear to have determined whether Side Letter 22 – by its written terms – created a continuing obligation."  FreightCar Br. at 1.  To the contrary, as shown, the Court quoted FreightCar's admission in this case of "'the undisputed fact that…FreightCar had continuing obligations under Side Letter 22,'" and held that FreightCar would be bound by its admissions in this case.  Summary Judgment Ruling at 41 (quoting FreightCar's preliminary injunction brief) and 25.

Moreover, FreightCar argued in its original summary judgment brief that "[b]y drafting and adopting the plan documents in the JAC Guide, FreightCar fulfilled its obligation under Side Letter 22 to create new employee benefit plans to replace the plans previously maintained by Bethlehem."  See Dkt. #120-1 at 9.  The Court rejected this argument in its Summary Judgment Ruling, holding:

> FreightCar was clearly under a contractual obligation to create mirror benefit plans pursuant to Side Letter 22, which was part of the 1991 sale agreement.  The conflicting evidence presented by the parties regarding the 1994 and 1997 negotiations creates a dispute of fact as to whether the parties agreed that

> FreightCar's obligation under Side Letter 22 had been satisfied, or whether the parties intended the obligation under Side Letter 22 to continue to govern past 1997.  The Court makes particular note of the fact that FreightCar continued to pay welfare benefits until 2002, when Bethlehem ceased to reimburse FreightCar for retiree welfare benefits.  The Union did not agree to termination of welfare benefits, which would have been required pursuant to the Bethlehem PHMB Continuation of Coverage language. FreightCar's assertion that it was entitled to unilaterally terminate retiree welfare benefits is therefore premised on the fact that the parties had agreed to give FreightCar a right to unilateral termination, and that FreightCar had no remaining obligations under Side Letter 22.
>
> The Court finds that the factual evidence is ambiguous regarding FreightCar's continuing obligations under Side Letter 22. As the Court found above, these questions of fact should be determined by the finder of fact at trial.

Summary Judgment Ruling at 47-48.

Under this ruling, the Court as fact-finder thus will address at trial the Side Letter 22 requirement that benefits continue "except as the Company and the Union may agree otherwise," and will determine whether the parties agreed in 1994 or 1997 bargaining to relieve FreightCar of its obligation to reach agreement with the Union prior to altering benefits.  This likely will entail, among other things, a determination by the Court as to whether the parties' agreement to remove Side Letter 22 from the CBA was essentially a "housekeeping" matter or whether both the Union and the Company intended that removal to give FreightCar *carte blanche* with respect to retiree benefits.

Again, "a motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant."  First Reconsideration Order at 2 (citations omitted).  FreightCar's attempt to relitigate the question of whether it had continuing obligations under Side Letter 22 falls in the face of (1) its admission that it did; (2) the Court's conclusion that this admission would be binding; (3) FreightCar's arguments on this point in summary judgment briefing; and

5

(4) the Court's discussion of this issue and resolution against FreightCar in its Summary

Judgment Ruling.

B.     **Contrary To FreightCar's Second Claimed Error, The Court Has Already Properly Found A Dispute Of Fact As To FreightCar's Ongoing Obligation To Provide Benefits Except As the Parties Agree Otherwise**

FreightCar next complains about the Court's finding of "a dispute of fact as to whether the parties agreed that FreightCar's obligation under Side Letter 22 had been satisfied, or whether the parties intended the obligation under Side Letter 22 to govern past 1997." FreightCar Br. at 5-6.  FreightCar asserts that the Court committed this second supposed error by declining to adopt FreightCar's position that any continuing obligations imposed by Side Letter 22 "ceased no later than 1997."  FreightCar Motion at 1.  In particular, FreightCar protests that the Court "failed to give effect to the merger and zipper clauses in the 1997 CBA."[1]  Id.

---

[1] FreightCar argues that these two provisions in and of themselves establish that the 1997 CBA unambiguously eliminated any continuing obligations under Side Letter 22.  FreightCar ignores all else, including a 1997 CBA "Successorship" provision quoted in the Court's Summary Judgment Ruling, which is contractual evidence to the contrary:

> (1) In the event of a permanent shutdown of the Plant prior to five years following the date of sale, the Company will guarantee that each former Johnstown America Corporation Employee at the Plant will receive from the owner of the Plant, from the Pension Benefit Guaranty Corporation (the "PBGC") and/or from the Johnstown America Corporation Pension Plan . . . the same retiree health and life insurance coverage, and the same severance pay that he would have received had the Plant shutdown as of the date of sale.

Dkt. #161 at 9-10 (quoting Successor provision). The provision would be utterly meaningless if, as FreightCar argues, those benefits could be terminated unilaterally.  It is a "cardinal principle of contract construction that a document should be read to give effect to all its provisions and to render them consistent with each other."  Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 52, 63 (1995).  The Successor provision accordingly must be considered in analyzing the 1997 CBA, and it precludes FreightCar's conclusion that the 1997 CBA unambiguously establishes that the Union and Company intended to give FreightCar unilateral authority to eliminate retiree healthcare benefits.

As with its arguments on the Court's first supposed error, FreightCar presented this point in its summary judgment briefing. See FreightCar SJ Brief at 10, 21; FreightCar SJ Reply Brief (Dkt. #146-1) at 5. In its Summary Judgment Ruling, the Court quoted the so-called "zipper clause," which was in Article XXI of the 1997 CBA. Dkt. #161 at 9-10. The Court also summarized FreightCar's argument with respect to this provision: "Rather than 'removing' any prior agreements, FreightCar states that Article XXI of the 1997 CBA clarified which documents comprised the parties' collective bargaining agreement." Summary Judgment Ruling at 39-40.

While the Court considered FreightCar's argument, it was not convinced. The Court began with the controlling law under the Supreme Court's recent ruling in M & G Polymers USA, LLC v. Tackett, 135 S.Ct. 926, 937 (2015):

> The Supreme Court noted that "we have already recognized that 'a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration.'" Id., quoting Litton, 501 U.S. at 207. The concurrence in Tackett noted that "[t]o determine what the contracting parties intended, a court must examine the entire agreement in light of relevant industry specific 'customs, practices, usages, and terminology.'" Id. at 937–38, citing 11 R. Lord, Williston on Contracts § 30:4, at 55–58 (4th ed. 2012) (Williston). The concurrence further noted that "[w]hen the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further." Id., citing Williston § 30:6, at 98–104. However, "when the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties." Id., citing Williston § 30:7, at 116–124.

Summary Judgment Ruling at 45-46; see also Southeastern PA Transp. Authority v. Brotherhood of R.R. Signalmen, 882 F.2d 778, 784 (3d Cir. 1989) ("where a court is called on to interpret a collective bargaining agreement it is generally appropriate for the court to look beyond the face of the collective bargaining agreement"); Transp.-Commc'n Emps. Union v. Union Pac. R.R. Co., 385 U.S. 157, 161 (1966) ("In order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements").

The Court proceeded to apply Tackett to the facts here:

> As the Court noted above, this case must be decided as a matter of contract law. The parties' 1994 and 1997 agreements are ambiguous on the question of whether the parties agreed that FreightCar had satisfied its mirroring obligation. Thus, as the concurrence noted in Tackett, the Court may look at extrinsic evidence to determine the intentions of the parties. The extrinsic evidence regarding the 1994 and 1997 negotiations is also inconclusive and presents a genuine dispute of material fact as to whether the parties agreed that the obligations under Side Letter 22 had been fulfilled and whether FreightCar had provided the Union with consideration in return for giving up this benefit. As FreightCar stated earlier in this litigation, it had continuing obligations through 1997. (ECF No. 63 at 25). Furthermore, FreightCar continued to provide welfare benefits through 2002, when Bethlehem ceased reimbursing FreightCar for paying retiree welfare benefits.
>
> ***
>
> The Court found above that FreightCar was under an obligation to create mirror benefit plans that included the Bethlehem PHMB Continuation of Coverage language. The Court further finds that there is a dispute of fact as to the parties' intention with regard to the continuing force of Side Letter 22.

Summary Judgment Ruling at 46-47.

As with the Court's first purported error, the purported second error has been thoroughly argued and thoroughly addressed. The fact that FreightCar does not like the Court's ruling provides no basis for reconsideration.

## IV.     CONCLUSION

For these reasons, the Court should deny FreightCar's Motion for Reconsideration.

|  | Respectfully submitted, |
|---|---|

s/ William T. Payne            .
   William T. Payne
   wpayne@fdpklaw.com

Feinstein Doyle Payne & Kravec, LLC
*Pittsburgh North Office*
12 Eastern Avenue
Pittsburgh, PA 15215
(412) 492-8797

Pamina Ewing
pewing@fdpklaw.com
Joel R. Hurt
jhurt@fdpklaw.com
Feinstein Doyle Payne & Kravec, LLC
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
(412) 281-8400

*Counsel for Plaintiffs Anthony J. Zanghi, Kenneth J. Sowers, Dominic McCuch, James Hohman, and Darrell Shetler and the Class*

Dated:  May 19, 2015

Joseph P. Stuligross
Associate General Counsel
jstuligross@usw.org

United Steelworkers
Five Gateway Center, Suite 807
Pittsburgh, PA 15222
(412) 562-2526

*Counsel for Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC*

9