**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**JOHNSTOWN DIVISION**

| | |
|---|---|
| ANTHONY J. ZANGHI, KENNETH J. SOWERS, DOMINIC MCCUCH, JAMES HOHMAN, DARRELL SHETLER on behalf of themselves and others similarly situated, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, | Civil Action No.: 13-146<br><br>Class Action<br><br>Jury Trial Demanded<br><br>Electronically Filed<br><br>Judge Kim R. Gibson |

                    Plaintiffs,

        v.

FREIGHTCAR AMERICA, INC.,
JOHNSTOWN AMERICA CORPORATION,
and JOHNSTOWN AMERICA
CORPORATION USWA HEALTH &
WELFARE PLAN,

                    Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR LEAVE TO AMEND**

## I.        INTRODUCTION

Pleadings in this case were to be amended by May 1, 2014 and discovery closed on June

25, 2014.  On September 3, 2014, Plaintiffs moved to strike factual assertions in FreightCar's

summary judgment response that were contrary to admissions in a preliminary injunction

opposition and supporting affidavit filed by FreightCar on September 18, 2013 and similar

admissions in the First Amended Complaint ("FAC") filed by FreightCar on March 1, 2014.  See

Dkt. #142.  In response to Plaintiffs' motion, FreightCar did not seek to amend the admissions in

its complaint but instead elected to rely exclusively on legal arguments in a brief.  See Dkt. #158.

The Court accordingly was obliged to review FreightCar's admissions and decide the legal

arguments, ultimately devoting five pages of its March 31, 2015 summary judgment ruling ("Summary Judgment Ruling") to explaining why FreightCar would be bound by the admissions in its preliminary injunction submission and First Amended Complaint. Dkt. #161 at 21-25.

Now, almost a year after the pleadings closed and discovery closed, and less than four months before trial, and only after the Court issued its ruling on summary judgment, FreightCar seeks leave to amend its complaint with factual assertions supposedly "uncovered through discovery" in order to undo the admissions in its First Amended Complaint. FreightCar Memorandum in Support of Leave to Amend ("FreightCar Br.") at 2. Glaring in its response is FreightCar's failure to cite a single fact that it learned in discovery.

Plaintiffs' Concise Statement of Undisputed Material Facts (Dkt. #125 ("Plaintiffs' Facts") identified FreightCar's admissions on July 18, 2014. FreightCar's Response to Statement of Facts (Dkt. #136) countered Plaintiffs' Facts **exclusively** with purported information it did **not** obtain in discovery but rather through new averments from its own witnesses, a 2003 deposition transcript of another of its witnesses, and the basic documents in this case which were of record long before discovery commenced.

FreightCar's timing alone provides ample basis to deny amendment. If FreightCar in fact learned through discovery that the admissions in its complaint were false, it should have sought leave to amend last June when discovery closed. At a minimum, FreightCar should have moved to amend last September when Plaintiffs filed their motion seeking to bind FreightCar to its admissions and thus specifically informed FreightCar that its new factual assertions contradicted its established admissions. Instead, it waited eight months before seeking leave to amend.

Furthermore, FreightCar fails to refer, even once, to the admissions it repeated in its September 2013 preliminary injunction opposition and the affidavit that FreightCar proffered to

this Court as evidentiary support.  The Court relied on these preliminary injunction admissions (see, e.g., Summary Judgment Ruling at 24, 25, 42).  While FreightCar has filed a Motion to Reconsider on other matters, FreightCar does not ask the Court to reconsider its conclusion that FreightCar is bound by its preliminary injunction admissions.  See Dkt. #178.  Accordingly, granting FreightCar leave to file an amended complaint would achieve nothing because FreightCar would still be bound by the same facts contained in its preliminary injunction admissions.

## II.    PERTINENT BACKGROUND AND PROCEDURAL HISTORY

### A.    Commencement Of The Litigation And FreightCar's Preliminary Injunction Admissions

FreightCar commenced this litigation on July 8, 2013 by filing its original Complaint against individual retirees in the United States District Court for the Northern District of Illinois.  Plaintiffs filed their own action in this Court, and moved for a preliminary injunction.  FreightCar opposed this motion with a 47-page brief ("FreightCar PI Opp.") filed September 18, 2013.  FreightCar supported its opposition with the August 7, 2002 Affidavit of Mark J. Duray (Dkt. #60-2) ("Duray Affidavit"), Vice President of Human Resources, who had worked at the plant in various human resources management roles since 1998.  See Duray Affidavit ¶ 1.

Effective November 1, 2013, FreightCar eliminated all of the retiree benefits at issue in this case.  Class members have been without their health and life insurance benefits since that date.

### B.    Plaintiffs' First Summary Judgment Motion, FreightCar's First Amended Complaint, The Court's Rule 16 Scheduling Order, And Discovery

Plaintiffs first moved for summary judgment on February 2, 2014.  Plaintiffs' summary judgment brief (Dkt. #83) and Statement of Undisputed Facts (Dkt. #85) both relied extensively

on the same FreightCar admissions that Plaintiffs relied on to support their second summary judgment motion, filed last summer.  See, e.g., Dkt. #85 ¶ 18 (relying on Mr. Duray's averment that "JAC was obligated to mirror the Bethlehem benefit plans"); id. ¶ 44 (relying on FreightCar's admission in the Deemer case that from 1991 through 1997, it was bound by the Continuation of Coverage clause).  FreightCar thus was on notice at least as of February 2, 2014 that Plaintiffs' theories of this case were premised in part on FreightCar admissions.

On March 1, 2014, FreightCar filed its First Amended Complaint (Dkt. #142).  In this pleading, FreightCar reiterated the admissions that FreightCar proffered to the Court as factual support for its preliminary injunction opposition.  See, e.g., FAC ¶ 26 ("…Johnstown America entered into a collective bargaining agreement with the USW and agreed in a side letter to the collective bargaining agreement ("Side Letter 22") to 'create mirror bargaining unit employee benefit plans material in all respects to the Bethlehem plans they replace.'  The Bethlehem plans in question provided for medical benefits to retirees or surviving spouses and life insurance benefits to retirees 'so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of [the Bethlehem plans], except as the Company and the Union may otherwise agree'"); id. ¶ 27 ("Pursuant to Side Letter 22, from 1991 until 1997 Johnstown America provided medical and life insurance benefits which mirrored the benefits provided by the Bethlehem plans").

In accordance with the parties' jointly prepared Fed.R.Civ.P. 26(f) Joint Report and the Court's April 3, 2014 scheduling Order, the deadline to amend pleadings was May 1, 2014.  See Dkt. #94 at 5; Dkt. #100 at 2.

Thereafter, the parties engaged in three months of discovery, which closed on June 25, 2014.  Plaintiffs had argued that no discovery was necessary on the ground that thorough

discovery had been taken in the <u>Deemer</u> litigation, and that the case should proceed to dispositive motions in the interest of expeditious resolution.  Nonetheless, in a spirit of compromise, the parties agreed to a limited discovery period.  Plaintiffs took no discovery themselves partly in reliance on the facts that FreightCar long has admitted not only through March 2014 in this proceeding but also in the original litigation before Judge Cindrich.  For example, if Plaintiffs had known that FreightCar would deny its long-repeated admission that JAC was obligated to mirror the Bethlehem benefit plans and the Continuation of Coverage provision, Plaintiffs would have sought discovery into the basis for FreightCar's new position.

**C.    Plaintiffs' Second Summary Judgment Motion And FreightCar's Response To Plaintiffs' Proffer Of Its Admissions**

One month after discovery closed, the parties filed cross motions for summary judgment on July 17, 2014.  As in their February 2, 2014 Statement of Undisputed Facts (Dkt. #85), Plaintiffs' July 18, 2014 Facts ("Plaintiffs' Facts") proffered and relied on a series of FreightCar admissions.  See Dkt. #125.  In its August 22, 2014 Response to Plaintiffs' Statement of Undisputed Facts ("FreightCar's Response to Plaintiffs' Facts") (Dkt. #136), FreightCar sought to refute the admissions that this Court ultimately found to be binding solely on the basis of the July 17, 2014 Declaration of its former attorney Claud L. McIver; the July 15, 2014 Declaration of another of its former attorneys, Robert C. Christenson; the December 18, 2003 deposition transcript of its former Vice President, Mark Duray; and basic documents like the Mirroring Agreement that Plaintiffs filed with their original July 2013 Complaint.

To wit, Plaintiffs asserted the undisputed fact that FreightCar admitted through its proffer of the Duray Affidavit that "JAC was obligated to mirror the Bethlehem benefit plans." Plaintiffs' Facts ¶ 14.  FreightCar sought to deny this admission solely on the basis of citations to Mr. Duray's December 18, 2003 deposition transcript.  FreightCar Response ¶ 14.  An April 8,

2014 letter from FreightCar's current counsel reflects that counsel had received Mr. Duray's deposition transcript from FreightCar's prior counsel.

In response to Plaintiffs' proffer of FreightCar's admission that "the Bethlehem Plans that were to be mirrored included the Continuation of Coverage language," FreightCar cited Side Letter 22 and the Bethlehem PHMB (FreightCar Response ¶ 19), both of which Plaintiffs filed as exhibits to their July 7, 2013 Complaint.  See Dkt. #1-4.  In response to Plaintiffs' proffer of FreightCar's admission that Side Letter 22 was carried forward in the 1994 CBA, FreightCar cited nothing but averments in its own former attorney's July 2014 Declaration.  See FreightCar Response ¶ 66 (citing FreightCar's Statement of Undisputed Facts (Dkt. #119) ¶ 56, which in turn cited nothing but Mr. McIver's Declaration).  FreightCar admitted to the truth of its admission in Mr. Duray's Affidavit that "There was no change in the 1994 CBA that is pertinent to this case."  FreightCar Response ¶ 67.  In response to Plaintiffs' proffer of FreightCar's admission that it was bound by the Mirroring Agreement through 1997, FreightCar cited the Declarations of its two attorneys, Mr. McIver and Mr. Christenson, as well as the 2002 Affidavit of Raymond Jastrzab, which Plaintiffs' filed as an exhibit to their July 7, 2013 Complaint.  See Dkt. #1-9.

In sum, in denying its admissions, FreightCar did not rely on **anything** that it learned in discovery.

**D.    The Court's Summary Judgment Ruling And FreightCar's Motion For Leave To Amend**

In its March 31, 2015 Summary Judgment Ruling, the Court ruled that FreightCar has made, *inter alia*, the following binding admissions:

1. "'…JAC was obligated to mirror the Bethlehem benefit plans…'"  Op. at 24 (quoting Duray Aff. ¶ 6).

2. "The Bethlehem Plans that were to be mirrored included the Continuation of Coverage language."  Op. at 24 (citing FAC ¶ 26).

3. The 1994 CBA "'carried forward'" Side Letter 22.  Op. at 24-25 (quoting Duray Aff. ¶ 9 and FreightCar PI Opp. at 6-7)

4. "'There was no change in the 1994 CBA that is pertinent to this case.'"  Op. at 42 (quoting Duray Aff. ¶ 7).

5. "'Pursuant to Side Letter 22, from 1991 until 1997 Johnstown America provided medical and life insurance benefits which mirrored the benefits provided by the Bethlehem plans.'"  Op. at 24 (quoting FAC ¶ 27).

On April 22, 2015, Plaintiffs filed a motion seeking to confirm that FreightCar would be precluded from offering argument or evidence contrary to the admissions that the Court has concluded are binding on FreightCar.  Dkt. #175.  On April 28, 2015, FreightCar filed its Motion for Leave to File Amended Complaint (Dkt. #179) and Motion for Reconsideration (Dkt. #177). In its first motion, FreightCar asks the Court to grant it leave to file a Second Amended Complaint.  For the Court's convenience, Plaintiffs attach a compare version reflecting the changes FreightCar seeks to make at Exhibit A hereto.  The compare document reflects that FreightCar now seeks to stake out positions diametrically at odds with its prior admissions.

Finally, FreightCar seeks in some cases to amend its contentions even beyond the positions it took in its summary judgment pleadings.  For example, FreightCar asserted in the FAC that its position in 2002 was that "it could reduce or eliminate the retiree medical and life insurance benefits subject to the terms of the Plan, with which it has complied."  See FAC ¶ 4. FreightCar now seeks to revise its 2002 position as follows:  "FreightCar maintained that nothing prohibited it from terminating the Retirees' medical and life insurance benefits."  Proposed SAC ¶ 4.  This emphatically was **not** FreightCar's position in 2002, and FreightCar did not claim to the contrary in its summary judgment submission.  Plaintiffs should not be obliged to litigate this issue at this stage of these proceedings.

7

In its motion to reconsider, FreightCar seeks the Court's review of the plain language of the mirroring agreement and seeks to create a subclass of retirees who retired after 1997. See FreightCar's Reconsideration Brief (Dkt. #178). Neither of FreightCar's motions asks the Court to reconsider or otherwise revisit its conclusion that FreightCar is bound by the admissions in its preliminary injunction submission. See, e.g., id. ("the point of this motion is not to relitigate issues that this Court has already decided.").

### III.    ARGUMENT

**A.    Amendment Should Be Denied Due To FreightCar's Delay**

Eleven months after the deadline for amending pleadings, ten months after the close of discovery, eight months after Plaintiffs sought to bind FreightCar to its admissions, and one month after the Court agreed with Plaintiffs that FreightCar should be bound, FreightCar seeks to amend its complaint, renounce its admissions, and dramatically alter this case four months before trial based entirely on new factual assertions it supposedly discovered (though it fails to show how or when) during discovery which ended in June, 2014. The Motion to Amend should be denied.

**B.    Amendment Should Be Denied Because Freightcar Has Not Established Good Cause Under Rule 16**

FreightCar argues that the Court should evaluate its motion for leave to amend under the liberal pleading standards of Rule 15(a). FreightCar Br. at 2. Putting aside whether Rule 15(a) should supply the only constraint after judicial resources have been expended resolving the

impact of a party's admissions,[1] FreightCar ignores that it seeks to violate the Court's scheduling order.

The Court's Rule 16 scheduling order adopted the parties' May 1, 2014 deadline for amending the pleadings.  Dkt. #100 at 2; Dkt. #94 at 5.  As this Court has explained, Rule 16 standards are implicated "when, as in this case, the deadline for seeking leave to amend the pleadings has passed under the court's Rule 16 scheduling order."  Covertech Fabricating, Inc. v. TVM Bldg. Products, Inc., 2014 WL 2199843, at *2 (W.D. Pa. May 27, 2014) (Gibson, J.).  Rule 16(b)(4) states that "[a] schedule may be modified **only for good cause** and with the judge's consent."  (Emphasis added).  Accordingly, "[b]efore evaluating a proposed amendment under Rule 15(a)…the court must evaluate whether the party seeking leave has shown 'good cause' to modify the scheduling order.  2014 WL 2199843, at *2.

"In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party."  Id. (citations omitted).  As another court in this District has explained, "'[T]o the extent that other federal rules, such as Rule 15 governing pleading amendments, contain a more lenient standard than good cause, the Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an amendment should be permitted under Rule 15.'"  Hawkins v. W. Penn Allegheny Health System, 2014 WL

---

[1] Given that FreightCar had every opportunity to seek leave to amend before the Court decided Plaintiffs' motion seeking to bind FreightCar to its admissions but failed to do so, FreightCar's belated motion should be treated as a motion to reconsider the Court's admissions ruling. Plaintiffs set forth the standards governing motions to reconsider in their Opposition to FreightCar's motion to reconsider.

5803112, at *3 (W.D. Pa. Nov. 7, 2014) (quoting Wright, Miller & Kane, 6A Fed. Prac. & Proc. Civ. § 1522.2 (3d ed. 2010)).

"Good cause" focuses on the diligence of the party seeking the modification of the scheduling order.  Ferencz v. Medlock, 2013 WL 6230626, at *3 (W.D. Pa. Dec. 2, 2013) (quoting Fed.R.Civ.P. 16, Advisory Committee Note (1983) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.")).  Thus, if a party was not diligent, there is no "good cause" to amend a scheduling order.  2013 WL 6230626, at *3.  The party seeking to modify a scheduling order bears the burden of demonstrating good cause.  Trask v. Olin Corp., 298 F.R.D. 244, 267 (W.D. Pa. 2014).

After arguing for six pages that Rule 15 governs its motion for leave to amend, FreightCar makes a cursory argument regarding good cause, wholly without reference to Rule 16(b) and the fact that its proposed amendment would violate the Court's scheduling order. FreightCar Br. at 5-11.  FreightCar's argument fails.

FreightCar first claims that it had no basis for knowing that facts admitted in its First Amended Complaint and injunction opposition would be found to be admissions or otherwise of import in the case.  FreightCar Br. at 10-11.  In fact, however, both Plaintiffs' February 2, 2014 and July 17, 2014 summary judgment submissions relied on precisely these facts and left no doubt that Plaintiffs' case for entry of judgment in their favor rested in part on FreightCar's admissions.  If there were any doubt on this score, they were laid to rest by Plaintiffs' September 3, 2014 Motion to Strike, wherein Plaintiffs, with great specificity, asked the Court to strike FreightCar denials and set forth the applicable standard of law on judicial admissions.. Dkt. #142.  FreightCar's claim that it "had no reason to believe" that the Court might bind it to its

admissions lacks merit where this is precisely what Plaintiffs, with legal and factual support, asked the Court to do.

FreightCar's second reason is equally unsupportable.  FreightCar claims that it "reasonably focused on evidence learned through discovery in its summary judgment motion rather than statements made in pre-discovery pleadings."  FreightCar Br. at 11.  As shown, FreightCar has failed to point to **any** evidence it learned through discovery as the basis for its eleventh hour denial of its long-repeated admissions.  And again, Plaintiffs' Motion to Strike adequately served to direct FreightCar's focus to its First Amended Complaint and response to the preliminary injunction motion.

FreightCar's third claimed reason for good cause is a non sequitor:  FreightCar complains that Plaintiffs sought to bind FreightCar to admissions made by its former counsel during the Deemer litigation.  FreightCar Br. at 11.  This point is immaterial because the Court bound FreightCar solely to the admissions made under the auspices of its current counsel in the current litigation.

None of this remotely amounts to good cause.  FreightCar has not met its burden of establishing that it was diligent, and the procedural history shows that it was not.

McWreath v. Range Resources--Appalachia, LLC, 2015 WL 321651, at *20 (W.D.Pa. Jan. 26, 2015), is instructive.  The court concluded that Rule 16(b) good cause was absent, explaining that it "has denied several untimely attempts to amend pleadings in situations where the parties had sufficient access to information to assert claims earlier in litigation."

Here, FreightCar seeks to amend after denying its admissions on the basis of the averments of its former attorneys, a 2003 transcript of the deposition of its Vice President, and documents attached to Plaintiffs' original complaint.  FreightCar thus has long had more than

sufficient access to the information that it now seeks to include in the proposed Second Amended Complaint – it could have interviewed its own witnesses including Mr. Duray at any time in this litigation, and most of the documents relied on by FreightCar were attached to Plaintiffs' original complaint.  FreightCar has not established good cause and leave to amend should be denied.

**C.     Even If FreightCar Could Demonstrate Good Cause Under Rule 16(b), Amendment Should Be Denied Under Rule 15(a)**

Even if FreightCar could establish Rule 16(b) good cause, amendment still should be denied under Rule 15(a) because of the prejudice class members will suffer if amendment is allowed at this late date.

This Court's ruling in Covertech shows why.  After the defendant filed an amended counterclaim three months after the deadline to amend the pleadings, the Court ruled that even if the defendant "could show good cause under Rule 16, the amendment would still be disallowed under Rule 15 because of the undue prejudice to Covertech."  2014 WL 2199843, at *2.  The Court explained that Rule 15 prejudice may result where an amendment would require the re-opening of discovery, delay resolution of the case, or unnecessarily increase the cost of litigation. Id. (citing Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001)).  The Court held that the plaintiff would be prejudiced because the defendant had already filed an amended pleading and the plaintiff had "invested significant time and expense" in filing a partial motion to dismiss.  To permit the defendant to file a second amended pleading would unnecessarily delay the litigation and result in needless additional costs to the plaintiff in having to file yet another responsive pleading or motion.

This analysis applies here.  If FreightCar is permitted to file a second amended complaint, Plaintiffs would be denied the opportunity to take discovery on any of FreightCar's new assertions, and will be obliged to go to trial in August 2015 without having tested FreightCar's

assertions by, for example, taking the depositions of the two former FreightCar attorneys whose declarations form the principal basis for FreightCar's attempt to refute its former admissions.

FreightCar has admitted that a party is prejudiced "if their inability to present evidence at trial is attributable to their reliance on the admission."  FreightCar Br. at 9.  In reliance on FreightCar's admissions, Plaintiffs did not seek discovery on such matters as FreightCar's new contention that it was never bound by the Continuation of Coverage clause.  Plaintiffs accordingly cannot cross-examine FreightCar's witnesses with their deposition testimony on this point.

This case involves several hundred retirees whose retiree insurance benefits have been terminated.  As the Court has recognized, "it is in the interests of all parties to proceed with this litigation as expeditiously as possible."  Memorandum and Order denying transfer (Dkt. # 73) at 17.  In recognition of this, Plaintiffs worked to ensure a streamlined discovery process and acquiesced to the dismissal without prejudice of their motion for preliminary injunction.  If FreightCar is permitted to evade its admissions, Plaintiffs will face a Hobson's choice between seeking to stay the trial to take appropriate discovery, leading to still further delay for class members, and going to trial without having taken discovery on FreightCar's new factual contentions.

Hayes v. Prism Career Institute, 2014 WL 1414371 (E.D.Pa. April 11, 2014), is on point. The plaintiffs there sought to amend their complaint **before** the end of discovery, to conform their pleading to their own deposition testimonies.  Id. at *4.  The court denied the motion because the plaintiffs had long had full knowledge of the facts supporting their new claims.  The court explained that "[t]he fact that plaintiffs' counsel did not apprise himself of this information until he prepared the plaintiffs for their depositions in 2014 is not an acceptable excuse for the

delay." Id. Here, FreightCar filed its Complaint in 2013 and had every opportunity to consult its own former attorneys and Vice President for Human Resources but has waited until now to seek leave to amend. As in Hays, a failure to interview one's own witnesses in a timely fashion is not an acceptable excuse for delay.

Finally, other grounds that justify denial of leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility. Harris v. Doe, 2015 WL 1444913, at *1 (W.D. Pa. March 30, 2015) (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)). Plaintiffs explain in the preceding section why FreightCar's pursuit of this issue has been marred by undue delay.

FreightCar's claim that it will suffer prejudice amounts to nil. Aside from the fact that prejudice to the moving party forms no part of the controlling considerations set forth by the Court, any "prejudice" is entirely of FreightCar's own making. It has proffered the Affidavit of its own witness prepared close in time to the events at hand and at a time when the critical importance of the timeline was apparent to all. Neither that witness, nor any of FreightCar's other witnesses or attorneys, believed that FreightCar's new set of alternative facts was worthy of mention. FreightCar will not be prejudiced if the Court disregards its decade-late factual assertions that fly in the face of the factual averments that FreightCar has repeated throughout this case.

FreightCar relies extensively on Schomburg v. Dow Jones & Co., Inc., 504 Fed. Appx. 100, 104 (3d Cir. 2012) (unpublished), which did not address the Rule 16(b) threshold showing that FreightCar must make here. FreightCar Br. at 3, 5. In Schomburg, the plaintiff asserted that he received an EEOC notice on March 18, 2011, but inadvertently wrote the date as March 8 because, as a first-time litigant, he was nervous while filling out the form complaint at the courthouse. Id. at 104. It goes without saying that this is a far different scenario than here,

14

where experienced counsel repeatedly admitted to the same set of facts, and did so on the basis

of, *inter alia*, the sworn affidavit of one of the party's key witnesses.

Beyond this, Schomburg merely held that amendment should not be disallowed merely

because an existing allegation constitutes a judicial admission – the district court in Schomburg

had **not** already, in the face of the party's contrary summary judgment contentions, concluded

that the party making the admission would be bound by that admission.  Furthermore, the

plaintiff in Schomburg sought to amend to correct a factual inadequacy at the very outset of the

case, in response to a motion to dismiss.  Id. at 105.  The prejudice there does not compare with

the circumstances faced by a party seeks to renounce their admissions long after discovery closed

and on the eve of trial.[2]

Somewhat incredibly, FreightCar quotes Lyons v. Beard, 2011 WL 2460930, *8 (M.D.

Pa. 2011), as follows:  "[T]he Court cannot perceive how Plaintiff will be unfairly prejudiced by

the discrete amendments proposed, as it appears clearly that these amended answers will be

entirely consistent with Defendants' litigation position throughout this action—a position that

Plaintiff has clearly understood."  FreightCar Br. at 8.  FreightCar's proposed new facts are of

---

[2] The cases from other Circuits cited by FreightCar also do not advance its cause.  None were decided on the basis of Rule 16(b), and in none had the court already concluded that a party should be bound by its admissions.  Beyond this, the 1977 Eighth Circuit case cited by FreightCar, Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537, 539 (8th Cir. 1977), held that the district court did not abuse its discretion in allowing the defendant leave to amend where the defendant's admission was based on the conclusions of three insurance companies.  In the 1945 Second Circuit case, Voltmann v. United Fruit Co., 147 F.2d 514 (2d Cir. 1945), the defendant was permitted to modify an admission that "there was a severe storm, the seas were heavy, and the said steamship pitched, tossed and rolled" to an admission that "the seas were heavy and the steamship rolled."  Finally, in King v. Cooke, 26 F.3d 720, 722 (7th Cir. 1994), state defendants mistakenly admitted to a prison inmate's factual allegations; a magistrate judge found that the admissions were merely a word processing error and that the defendants had otherwise indicated that they denied liability.  None of these cases involved a fact pattern like that here.

course entirely **inconsistent** with its litigation position throughout this action.  This was the basis for the Court's ruling that FreightCar would be bound by its admissions, and FreightCar has not asked the Court to reconsider this conclusion.

Unlike FreightCar's cited authority, this case does not involve isolated facts carelessly inserted in a complaint.  FreightCar asserted the facts at issue here in its Complaint and First Amended Complaint and also proffered these same facts and elaborated on them through submission of a contemporary affidavit.  In particular, FreightCar urged the Court to deny Plaintiffs' motion for preliminary injunction on the basis of, *inter alia*, the following sworn facts:

- "…JAC was obligated to mirror the Bethlehem benefit plans…";

- "There was no change in the 1994 CBA that is pertinent to this case";

- "Going into the 1997 negotiations, JAC set as a goal to eliminate the side letters which had accompanied the 1991 CBA (and been carried forward in the 1994 CBA)…";

- "In the give-and-take of [1997] negotiations, JAC achieved most of what it sought.  Specifically, it achieved the Union's agreement to abrogate all of the 1991 side letters except numbers 4, 5, 13 and 26";

- "Having abrogated the Mirroring Agreement, in the 1997 CBA the parties agreed that health and welfare benefits would thereafter be governed by the terms of JAC's Employee Guide… Thus, JAC and the Union installed JAC's Employee Guide [in the 1997 CBA] as the governing instrument in replacement of any old Bethlehem plan or agreement"; and

- "the bargaining unit employees (and their Union) had had over four years to scrutinize JAC's Employee Guide before enshrining it as the governing document in the 1997 CBA."

Duray Aff. ¶¶ 6, 9, 10, 11, 14.

In addition to relying on most of these Duray admissions, FreightCar's Preliminary Injunction Opposition also cited "the undisputed fact that before its abrogation in 1997,

FreightCar had continuing obligations under Side Letter 22."  FreightCar PI Opp. at 25.

FreightCar's preliminary injunction brief admission continued:

> The plain language of Side Letter 22 included this continuing obligation: 'Johnstown America Corporation bargaining unit welfare plans **_will mirror_** existing Bethlehem plans and shall be effective immediately after closing….Johnstown America Corporation **_shall be responsible_** for all benefits payable to its employees or retirees which arise or are based on events which occurred after closing."

FreightCar PI Opp. at 25 (emphasis in the original).

The motion to amend should be denied.

### E.     FreightCar Should Not Be Permitted To Present Evidence Contrary To Its Admissions At Trial

In a footnote, FreightCar asserts that "some courts have found that amending judicial admissions is not a prerequisite to presenting evidence to the contrary at trial."  FreightCar Br. at 1 n.2.  To support this proposition, FreightCar cites Adani Exports Ltd. v. AMCI (EXPORT) Corp., 2009 WL 2485370, at *8 (W.D. Pa. Aug. 7, 2009), where the court "notes that this is not the first time that AMCI–Export has requested that the Court deem the referenced complaint allegation as a judicial admission.  The request was denied."  Here, of course, the Court did not deny Plaintiffs' motion seeking to bind FreightCar to its admissions – the Court granted that motion.

FreightCar also cites Hartley v. Pocono Mt. Regl. Police Dept., 2009 WL 793034, at *4 (M.D. Pa. Mar. 24, 2009), where the court found that an admission was "plainly inadvertent" and an "oversight":  after denying the premise of a constructive discharge claim, Defendants admitted the allegation that "Plaintiff Hartley was constructively discharged."  Here, FreightCar's present counsel repeatedly relied on the same set of admissions which are at the

heart of this case and which FreightCar's prior counsel also asserted.  This is not a case of mere inadvertence or oversight.[3]

## IV.   CONCLUSION

For these reasons, the Court should deny FreightCar's motion for leave to amend.

Respectfully submitted,

s/ William T. Payne          .
   William T. Payne
   wpayne@fdpklaw.com

Feinstein Doyle Payne & Kravec, LLC
*Pittsburgh North Office*
12 Eastern Avenue
Pittsburgh, PA 15215
(412) 492-8797

Pamina Ewing
pewing@fdpklaw.com
Joel R. Hurt
jhurt@fdpklaw.com
Feinstein Doyle Payne & Kravec, LLC
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
(412) 281-8400

*Counsel for Plaintiffs Anthony J. Zanghi,*
*Kenneth J. Sowers, Dominic McCuch,*
*James Hohman, and Darrell Shetler and the*
*Class*

Dated:  May 19, 2015

Joseph P. Stuligross
Associate General Counsel
jstuligross@usw.org
United Steelworkers
Five Gateway Center, Suite 807
Pittsburgh, PA 15222
(412) 562-2526

*Counsel for Plaintiff United Steel,*
*Paper and Forestry, Rubber,*
*Manufacturing, Energy, Allied*
*Industrial and Service Workers*
*International Union, AFL-CIO/CLC*

---

[3] In neither of the two cases from other circuits cited by FreightCar had the court already ruled that a party would be bound by its admission.  See Securities and Exch. Commn. v. Natl. Student Mktg. Corp., 73 F.R.D. 444, 447 n.10  (D.D.C. 1977); Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 861 (9th Cir. 1995).