# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**JOHNSTOWN DIVISION**

| | |
|---|---|
| **FREIGHTCAR AMERICA, INC.,** | **Civil Action No.:  3:14-cv-00017-KRG** |
| **Plaintiff,** | ~~FIRST~~**SECOND AMENDED COMPLAINT** |
| **v.** | **FOR DECLARATORY JUDGMENT** |
| **UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, and ANTHONY J. ZANGHI, KENNETH J. SOWERS, DOMINIC MCCUCH, JAMES HOHMAN, and DARRELL SHETLER, individually and on behalf of others similarly situated,** | |
| **Defendants.** | |

_____Plaintiff, FreightCar America, Inc. (along with its predecessors, "FreightCar" or "the Company"), for its complaint for a declaratory judgment against the defendants United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC ("USW") and Anthony J. Zanghi, Kenneth Sowers, Dominic McCuch, James Hohman, and Darrell Shetler, as individuals and on behalf of others similarly situated ("the Retirees~~" or "~~"; together with the ~~Defendant Class~~USW, "the Defendants"), states as follows:

## INTRODUCTION

1.      As former employees of FreightCar, the Retirees were eligible upon retirement for Company-subsidized retiree medical and life insurance benefits under benefit plans sponsored by

FreightCar. ~~Prior to November 1, 2013, the Retirees received benefits under the JAC USWA Health and Welfare Plan~~ (together with past versions, "the Plan").  The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. ("ERISA").

2.      ERISA does not require automatic vesting of employee welfare benefit plans, and FreightCar at no time intended the retiree medical and life insurance benefits provided under the Plan or any of the Retirees' respective collective bargaining agreements to be vested.  FreightCar has fulfilled ~~its~~any obligations it had under all collective bargaining agreements previously in effect between the USW and the Company addressing welfare benefits available to employees upon retirement, and FreightCar has the right to reduce or eliminate these benefits.

3.      -Under the terms of the Plan, FreightCar "expressly reserve[d] the right to change or terminate those retiree benefits at any time, both for individuals who are already retired at that time and employees who retire thereafter."  Furthermore, FreightCar "specifically emphasize[d]" in the Plan documents "that the act of retirement does *not* give the retiree a right to receive the same benefits under this plan for the rest of his or her life."

4.      FreightCar sought to terminate the Retirees' medical and life insurance benefits in early 2002, but the Retirees and the USW allegedly acting on the Retirees' behalf ~~(collectively, "the Defendants")~~ challenged FreightCar's ability to do so in two class action lawsuits. Specifically, the ~~Defendants~~Retirees and the USW claimed that the retiree medical and life insurance benefits were vested and could not be changed.  FreightCar maintained that nothing prohibited it ~~could reduce or eliminate~~from terminating the ~~retiree~~Retirees' medical and life insurance benefits ~~subject to the terms of the Plan, with which it has complied.~~.

5.     The parties eventually settled the class action lawsuits pursuant to their February 28, 2005 settlement agreement ("the Settlement Agreement").  Under the Settlement Agreement, FreightCar agreed to contribute to the Retirees' medical coverage and to continue to provide life insurance benefits.  However, the Settlement Agreement expressly provided that as of November 30, 2012, FreightCar could cease making these contributions.  The Settlement Agreement further provided that if FreightCar stopped making the contributions, both parties would "retain their legal positions that they asserted" in the two class action lawsuits.

6.     In advance of the November 30, 2012 voluntary termination date, specifically in June 2011, FreightCar and the USW began discussing the possibility of an extension beyond November 30, 2012 for Company contributions to retiree medical coverage and life insurance benefits.  From June 2011 to June 2013, the parties engaged in ongoing discussions—with the USW and former class counsel, Feinstein Doyle Payne & Kravec, LLC, negotiating on behalf of the Retirees—in an effort to reach a new agreement with respect to FreightCar's benefits contributions.  Notwithstanding numerous meetings and discussions, the parties were unable to reach an agreement.

7.     Having spent over two years in negotiations with the USW and former class counsel, and having been unable to reach a consensus as to the terms and scope of potential future contributions for retiree medical and life insurance benefits, FreightCar announced in June 2013 that it planned to cease contributions for medical coverage and terminate the Retirees' life insurance benefits effective October 1, 2013.  Soon thereafter FreightCar filed a complaint in the Northern District of Illinois requesting a declaratory judgment that it was within its rights under ERISA and the Plan to terminate or reduce the Retirees' medical and life insurance benefits.  Because of governing law precluding a non-opt out defendant class of similarly-situated retirees,

AMECURRENT 716052288.1 28-Apr-15 15:03

FreightCar named as defendants each affected or potentially affected individual, as well as the USW.

8.     After FreightCar filed its lawsuit, the Retirees and the USW filed another lawsuit concerning the termination of the medical and life insurance benefits in this Court.  The Retirees ~~purport to~~ bring their action on behalf of a near identical class of former FreightCar employees.

9.     FreightCar subsequently agreed to defer termination of the Retirees' medical and life insurance benefits until November 1, 2013 while the parties again attempted to reach a settlement with respect to FreightCar's contributions for these benefits.  However, when an agreement was not reached, FreightCar stopped contributing to the Retirees' medical benefits and terminated their life insurance effective November 1, 2013.

10.    Subsequently, FreightCar's complaint was transferred to this Court from the Northern District of Illinois by order of January 14, 2014.

11.    FreightCar brings this action to confirm its rights under ERISA and the Plan to reduce or terminate the medical and life insurance benefits of the Retirees and the Defendant Class they seek to represent in their lawsuit.

## JURISDICTION, VENUE, AND SUBJECT MATTER

12.    This is an action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*

13.    FreightCar seeks a declaration that the Retirees and the Defendant Class are not entitled to vested or lifetime medical and life insurance benefits from FreightCar.  FreightCar further seeks a declaration that it had the legal right to modify, amend, or terminate the retiree medical coverage and life insurance benefits the Retirees and the Defendant Class received under the Plan.

14.     This Court has jurisdiction pursuant to the Declaratory Judgment Act because jurisdiction would be proper in a coercive action brought pursuant to ERISA Sections 502(a)(1)(B), 502(a)(3), 502(e)(1), and 502(f) (29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), 1132(e)(1), and 1132(f)) -against FreightCar.

15.     Venue is proper in both the Northern District of Illinois and the Western District of Pennsylvania under Sections 502(e)(2) and 502(f) of ERISA (29 U.S.C. §§ 1132(e)(2) and 1132(f)), as well as under 28 U.S.C. § 1391, although FreightCar maintains that this action belongs in the Pittsburgh Division pursuant to the parties' agreement in the previously referenced settlement agreement.

## PARTIES

16.     FreightCar is a Delaware corporation with its corporate headquarters and principal place of business in Chicago, Illinois.  FreightCar is a leading manufacturer of railcars and operates facilities throughout the United States.  FreightCar is an "employer" and was a "plan sponsor" of the Plan within the meaning of Sections 3(5) and 3(16)(B)(i) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(16)(B)(i).  The Plan provides for medical coverage and life insurance benefits for certain groups of retirees who were formerly employed at FreightCar's Johnstown, Pennsylvania facilities ("the Johnstown Facility").  The Plan is an "employee welfare benefit plan" under Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

17.     The USW is an unincorporated association with its headquarters in Pittsburgh, Pennsylvania.  The USW was the collective bargaining representative for workers at the Johnstown Facility and negotiated collective bargaining agreements with FreightCar relating to, among other things, retiree medical and life insurance benefits.  The USW has continued to represent the Retirees from at least June 2011 until the present date in connection with their

AMECURRENT 716052288.1 28-Apr-15 15:03

claims that they are entitled to vested, lifetime, and unalterable medical and life insurance benefits.

18.     Named defendant and class representative Anthony J. Zanghi is an adult resident of Johnstown, Pennsylvania in Cambria County.  Between 1988 and 2007, Zanghi worked at the Johnstown Facility, where he was a member of the bargaining unit represented by the USW. Zanghi was a "participant" in the Plan, as defined by Section 3(7) of ERISA, 29 U.S.C. § 1002(7).  Through the lawsuit he filed in this Court and which is currently pending, *Zanghi, et al, v. FreightCar America, Inc.*, 3:13-cv-00146-KRG (W.D. Pa.), Zanghi claims to be entitled to the medical and life insurance benefits previously provided by the Plan.

19.     Named defendant and class representative Kenneth J. Sowers is an adult resident of Johnstown, Pennsylvania in Cambria County.  Between 1988 and 2007, Sowers worked at the Johnstown Facility where he was a member of the bargaining unit represented by the USW. Sowers was a "participant" in the Plan, as defined by Section 3(7) of ERISA, 29 U.S.C. § 1002(7).  Through the lawsuit he filed in this Court and which is currently pending, *Zanghi, et al, v. FreightCar America, Inc.*, 3:13-cv-00146-KRG (W.D. Pa.), Sowers claims to be entitled to the medical and life insurance benefits previously provided by the Plan.

20.     Named defendant and class representative Dominic McCuch is an adult resident of Windber, Pennsylvania in Cambria County.  Between 1974 and 2002, McCuch worked at the Johnstown Facility where he was a member of the bargaining unit represented by the USW. McCuch was a "participant" in the Plan, as defined by Section 3(7) of ERISA, 29 U.S.C. § 1002(7).  Through the lawsuit he filed in this Court and which is currently pending, *Zanghi, et al, v. FreightCar America, Inc.*, 3:13-cv-00146-KRG (W.D. Pa.), McCuch claims to be entitled to the medical and life insurance benefits previously provided by the Plan.

AMECURRENT 716052288.1 28-Apr-15 15:03

21.     Named defendant and class representative James Hohman is an adult resident of Johnstown, Pennsylvania in Cambria County.  Between 1971 and 2002, Hohman worked at the Johnstown Facility where he was a member of the bargaining unit represented by the USW. Hohman was a participant in the Plan, as defined by Section 3(7) of ERISA, 29 U.S.C. § 1002(7).  Through the lawsuit he filed in this Court and which is currently pending, *Zanghi, et al, v. FreightCar America, Inc.*, 3:13-cv-00146-KRG (W.D. Pa.), Hohman claims to be entitled to the medical and life insurance benefits previously provided by the Plan.

22.     Named defendant and class representative Darrell Shetler is an adult resident of New Florence, Pennsylvania in Westmoreland County.  Between 1966 and 2001, Shetler worked at the Johnstown Facility where he was a member of the bargaining unit represented by the USW.  Shetler was a participant in the Plan, as defined by Section 3(7) of ERISA, 29 U.S.C. § 1002(7).  Through the lawsuit he filed in this Court and which is currently pending, *Zanghi, et al, v. FreightCar America, Inc.*, 3:13-cv-00146-KRG (W.D. Pa.), Shetler claims to be entitled to the medical and life insurance benefits previously provided by the Plan.

23.     This Court has personal jurisdiction over the Defendants pursuant to Section 502(e) of ERISA, 29 U.S.C. § 1132(e) and by virtue of their voluntary submission to the Court as plaintiffs and putative class representatives in *Zanghi, et al, v. FreightCar America, Inc.*, 3:13-cv-00146-KRG (W.D. Pa.), pending before this Court.

## FACTUAL ALLEGATIONS

### ~~Johnstown America Purchased the Johnstown Facilities in 1991 and Agreed to Mirror Benefits Previously Provided by Bethlehem Steel~~

24.     The Retirees and the members of the Defendant Class are all former employees (or the spouses of deceased former employees) that worked at FreightCar's Johnstown Facility

AMECURRENT 716052288.1 28-Apr-15 15:03

for FreightCar America, Inc. or one of its predecessors, including Johnstown America

Corporation ("Johnstown America").

     25.     Prior to 1991, Bethlehem Steel Corporation ("Bethlehem") owned the Johnstown

Facility and produced railcars there.  In 1991, Johnstown America acquired the Johnstown

Facility and its assets from Bethlehem.

     26.     As part of the purchase of the Johnstown Facility, Johnstown America entered

into a collective bargaining agreement with the USW ~~and~~("the 1991 CBA").  Johnstown

America agreed in a side letter ("Side Letter 22") to the ~~collective bargaining agreement to~~1991

CBA that it would "create mirror bargaining unit employee benefit plans identical in all material

respects to the Bethlehem plans they replace."  ~~The Bethlehem plans in question provided for~~

~~medical benefits to retirees or surviving spouses and life insurance benefits to retirees "so long as~~

~~the individual remains retired from the company or receives a Surviving Spouse's benefits,~~

~~notwithstanding the expiration of [the Bethlehem plans], except as the Company and the Union~~

~~may otherwise agree."~~

     ~~27.~~   Pursuant to Side Letter 22, ~~from 1991 until 1997 Johnstown America provided~~

~~medical and life insurance benefits~~FreightCar created a series of bargaining unit employee

benefit plans which ~~mirrored the benefits provided by~~replaced the Bethlehem plans.

     27.     ~~Johnstown America~~ These plans were drafted, negotiated, and revised by

FreightCar and the USW ~~Renegotiated~~ after FreightCar purchased the Johnstown Facility.  The

terms of these plans were set forth in the ~~Agreement to Mirror Benefits in 1997 and Established~~

~~that Retiree Medical and Life Insurance Benefits Would be Provided Pursuant to Johnstown~~

~~America's~~Johnstown America Corporation Employee Guide ("the JAC Guide").

AMECURRENT 716052288.1 28-Apr-15 15:03

28.     In ~~1997~~1993, the JAC Guide was adopted by the parties, distributed to the members of the bargaining unit, and served as the controlling Plan document retroactive to October 28, 1991.  The Plan did not limit FreightCar's right to unilaterally terminate or alter retiree medical or life insurance benefits.

~~28.~~29.  In 1994, Johnstown America and the USW entered into a new collective bargaining agreement ("the ~~1997~~1994 CBA"), which superseded and replaced the parties' prior collective bargaining agreement.  Side Letter 22 was not part of the 1994 CBA.

~~29.     Two important provisions of the 1997 CBA addressed Johnstown America's obligations regarding the provision of retiree medical and life insurance benefits.~~

30.     ~~First, the~~Johnstown America and the USW entered into another collective bargaining agreement in 1997 ("the 1997 CBA").  The 1997 CBA superseded and replaced the 1994 CBA.

~~30.~~31.  The 1997 CBA contained an integration clause (commonly referred to as a "zipper clause") which explicitly abrogated all prior agreements not referenced in the new collective bargaining agreement.  This clause stated that:

> This Agreement and the documents expressly referred to herein are the only documents by which the parties intend to be contractually or statutorily bound. Any document, not expressly referred to herein that may be brought forth by either the Company or the Union after ratification of this Agreement may be included as part of this Agreement, provided that both parties agree to its inclusion.  All appendices from previous agreements have either been consolidated into Articles of this Agreement or in any event, are no longer part of this Agreement.

~~31.~~32.  The 1997 CBA expressly identified ~~a number~~four of the twenty-seven side letters ~~from earlier collective bargaining agreements, which became part of the 1997 CBA pursuant to~~negotiated in 1991—specifically, Side Letters 4, 5, 13, and 26. These were the ~~zipper clause~~

AMECURRENT 716052288.1 28-Apr-15 15:03

referenced above.  This only four 1991 side letters incorporated into the 1997 CBA by reference.

The 1997 CBA did not reference Side Letter 22, which as a result was effectively abrogated. .

32.33.  Appendix 9 of the 1997 CBA reflected the parties' agreement that going forward,

benefits would be provided on the terms set forth in the Johnstown America Employee Guide.

Specifically, Appendix 9 provided that:

> The Parties agree that employees shall be eligible for insurance and other benefits
> as set forth in "JAC's Employee Guide" for Represented P&M employees, as
> amended during the negotiations which preceded the execution of this collective
> bargaining agreement.   All insurance and other benefits addressed in this
> Appendix will be calculated using the Employee's pension service date to
> determine the length of service.

33.      In short, the parties agreed in the 1997 CBA to eliminate the mirroring agreement

in Side Letter 22 and to instead provide that the provisions of the Johnstown America Employee

Guide would govern retiree medical and life insurance benefits

34.      As set out in the Johnstown America Employee Guide, the relevant plans for

medical and life insurance benefits were the Johnstown America Corporation Hourly Employees

Medical Plan and the Johnstown America Corporation Hourly and Salaried Employees Basic

Life Insurance Plan ("the Johnstown Plans").

35.      With respect to retiree medical and life insurance benefits, the Johnstown

America Employee Guide states that:

> Subject to collective bargaining, the company reserves the right to end, suspend,
> or amend the plans at any time, in whole or in part.  This means [Johnstown
> America's ERISA benefit plans] may be discontinued in part or in their entirety or
> modified to provide different benefits or different levels of benefits, the price of
> coverage may be changed, or any other modifications may be implemented.  If
> any changes are made, you'll be notified.

36.      From the day the 1997 CBA was ratified until its expiration, Johnstown America

provided retiree medical and life insurance benefits under the terms of the Johnstown America

Employee Guide and the Johnstown Plans.

**~~The Parties Litigated the Ability of Johnstown America (now FreightCar) to Terminate Retiree Medical and Life Insurance Benefits and Eventually Entered into the Settlement Agreement~~**

~~37.~~34.  Following the expiration of the 1997 CBA in 2001, Johnstown America and the USW entered into negotiations for a new collective bargaining agreement.

~~38.~~35.  The retiree medical and life insurance benefits were a subject of collective bargaining during the 2001 negotiations.  Johnstown America made a proposal to change the level of contributions for retiree medical and life insurance benefits.  The reason for this proposed ~~changed~~change related to Bethlehem's agreement to reimburse Johnstown for these benefits.  As part of the asset purchase agreement under which Johnstown America acquired the Johnstown Facility from Bethlehem, Bethlehem agreed to reimburse Johnstown America for the cost of retiree medical and life insurance benefits.  However, as a result of Bethlehem's financial difficulties and pending bankruptcy, Bethlehem notified Johnstown America that it would not make any further payments as of January 2002.

~~39.~~36.  The USW stated it was not willing to accept changes to the retiree medical and life insurance benefits.  Johnstown America and the USW bargained to impasse ~~over retiree medical and life insurance~~regarding benefits and other issues.  When no agreement was reached, Johnstown America implemented its final ~~offer~~proposal on January 21, 2002.  Throughout the collective bargaining process, Johnstown America informed the USW that it would not and could not continue the retiree medical and life insurance benefits if Bethlehem failed to honor its obligation to reimburse Johnstown America for the cost of those benefits.  Johnstown America notified the affected retirees and their spouses by letter that it would terminate the benefits on May 1, 2002.

40.37.  The USW and the Retirees responded by filing *United Steelworkers of America, AFL-CIO-CLC, Geraldine Deemer, and Darrell Shetler v. Johnstown America Corporation, et al.*, No. 02-CV-806 (W.D. Pa.) ("the *Deemer* Litigation") and *United Steelworkers of America, AFL-CIO-CLC, Reggie Britt, et al. v. Johnstown America Corporation, et al.*, No. 03-CV-1298 (W.D. Pa.) ("the *Britt* Litigation").  In those lawsuits, the USW and the Retirees alleged that the medical and life insurance benefits provided to the Retirees were vested and could not be changed.  Johnstown America responded that it had fully complied with any obligations it had under the Plan and had the legal right to reduce or eliminate retiree the Retirees' medical and life insurance benefits after bargaining to impasse over them. .

38.     In 2005, the USW and Johnstown America entered into a collective bargaining agreement ("the 2005 CBA"), which superseded and replaced the previous collective bargaining agreement.  With respect to retiree medical and life insurance benefits, the 2005 CBA provided:

Effective January 1, 2005 active employees and current and future eligible retirees and their eligible dependents will be covered by the Steelworkers Health and Welfare Fund POS Plan as set forth in the Employee Guide.

39.     The 2005 CBA also included a zipper clause.  The 2005 zipper clause provided, "This Agreement and the documents expressly referred to herein are the only documents by which the parties intend to be contractually or statutorily bound. . . . All Appendices from previous agreements have either been consolidated into Articles of this Agreement or in any event, are no longer part of this Agreement."  The 2005 CBA's zipper clause then referred to a number of ancillary agreements and side letters, but did not refer to Side Letter 22 or any other 1991 Side Letter.

41.40.  On February 28, 2005, the USW and Johnstown America settled the *Deemer* Litigation and *Britt* Litigation.  Under the Settlement Agreement, Johnstown America agreed to

make contributions for retiree medical coverage on a per household basis and to continue the life

insurance benefits until November 30, 2012, at which time the Company could cease

contributions and all parties would retain the position they had taken in the *Deemer* Litigation

and the *Britt* Litigation.

42.41.  On August 5, 2008, FreightCar (as successor to Johnstown America) and the

USW settled a subsequent lawsuit, *Sowers v. FreightCar America, Inc. et al.*, No. 07-CV-201

(W.D. Pa.) ("the *Sowers* Litigation"), which related to FreightCar's decision to close the

Johnstown Facility.  As part of that settlement, FreightCar agreed to make contributions to retiree

medical coverage and to continue life insurance benefits for the former employees of the facility

under the terms of the Settlement Agreement reached in the *Deemer* Litigation and the *Britt*

Litigation.

**FreightCar and the USW, Despite Two Years of Negotiations, Failed to Reach a New Agreement Regarding Contributions for Retiree Medical Coverage and Life Insurance Benefits**

42.     On May 15, 2008, the 2005 CBA terminated as a result of FreightCar's decision

to close the Johnstown Facility.  In connection with the decision to close the plant, FreightCar

and the USW executed a plant shutdown agreement ("the 2008 Shutdown Agreement").  The

2008 Shutdown Agreement provided that, "Current retirees and employees who retire under the

terms of the Sowers/Hayden Litigation Settlement Agreement will continue to be eligible for

retiree healthcare coverage under applicable terms and conditions of the CBA and under

applicable terms and conditions of the court settlements in the Deemer and Britt cases."

43.     In June 2011, recognizing the then approaching November 30, 2012 date after

which FreightCar could cutoff contributions under the Settlement Agreement, FreightCar and the

USW began efforts to negotiate a new agreement for continuing contributions for the retiree

medical coverage and life insurance benefits.

44.    Although former class counsel (who currently represents the Retirees and the Defendant Class in their pending lawsuit) was present, the USW was the primary spokesperson at all negotiations on behalf of the Retirees.  The USW periodically met with other USW representatives to evaluate various company proposals throughout the negotiations.  Upon information and belief, the Retirees explicitly assented to this representation by the USW.

45.43.  From June 2011 until June 14, 2013, the parties negotiated in an attempt to reach a new agreement on contributions for retiree medical coverage and life insurance benefits.  Despite FreightCar's best efforts, the parties did not reach a new agreement.

46.44.  In July 2013, FreightCar informed the USW and the Retirees that it intended to cease its medical benefit contributions and terminate the life insurance benefits effective October 1, 2013.

47.45.  FreightCar subsequently agreed to defer termination of the Retirees' medical coverage and life insurance benefits until November 1, 2013 while the parties again attempted to reach a new settlement.  However, again, the parties failed to reach an agreement and FreightCar ceased medical benefit contributions and terminated the life insurance effective November 1, 2013.

48.46.  FreightCar brings this Declaratory Judgment action to confirm its right to terminate the Retirees' medical benefits and life insurance under the Plan.

## CLASS ACTION ALLEGATIONS

49.47.  The Defendant Class is comprised of: (1) former FreightCar employees that were represented by the USW at the time of their retirement from FreightCar, and who upon retirement received or were eligible to receive medical and life insurance benefits under the Plan; and (2) those individuals who received or were eligible to receive medical and life insurance

benefits under the Plan as a spouse, surviving spouse, or dependent of an aforementioned former FreightCar employee.

50.48.  Joinder of the approximately 650 individual members of the Defendant Class is not practicable.

51.49.  The right of FreightCar to terminate the retireeRetirees' medical and life insurance benefits under the Plan is a question of law common to all members of the Defendant Class.

52.50.  The claims and defenses of the Class Representatives are typical of the Defendant Class' claims and defenses.  The Class Representatives all assert, *inter alia*, that FreightCar is obligated under  prior collective bargaining agreements to provide medical and life insurance benefits that cannot be unilaterally altered or terminated during their lifetimes.

53.51.  The Class Representatives and their counsel are able and willing to fairly and adequately represent the Defendant Class.  The Class Representatives and their counsel have filed their own coercive action related to the same subject matter as this action and on behalf of a nearly identical putative class.

54.52.  This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2).  The Defendants claim that FreightCar has acted on grounds generally applicable to the Defendant Class and violated ERISA and the Plan by unilaterally terminating the medical and life insurance benefits.  A declaratory judgment regarding FreightCar's right to terminate the medical and life insurance benefits under the Plan is appropriate with respect to the class as a whole.

55.53.  Alternatively, this suit may be brought as a class action under Federal Rule of Civil Procedure 23(b)(1).  The litigation of the parties' claims in separate individual actions may

AMECURRENT 716052288.1 28-Apr-15 15:03

result in varied interpretations of the Plan, thereby subjecting FreightCar to incompatible standards of conduct.  Additionally, the adjudication of class members' claims on an individual basis may impair the ability of other individual class members to protect their interests.

## COUNT I

**Request for Declaratory Judgment** ~~that Freightcar is Legally Entitled to Amend or Terminate the Plan and the Benefits Provided Thereunder~~

~~56.~~54.  FreightCar re-alleges and incorporates by reference Paragraphs 1 through ~~54~~53 as though fully set forth herein.

~~57.~~55.  Section 404(a)(1)(d) of ERISA requires that FreightCar comply with the terms of the Plan documents under which FreightCar provided retiree medical and life insurance benefits to the extent those terms are consistent with ERISA's requirements.  FreightCar maintains that it has acted in accordance with the terms of the Plan in unilaterally terminating the ~~retiree~~Retirees' medical and life insurance benefits.

~~58.~~56.  An actual controversy exists between the parties concerning FreightCar's right to modify, amend, or terminate the Retirees' medical and life insurance benefits.  A declaration of the parties' respective rights and obligations pertaining to the retiree medical and life insurance benefits is necessary to resolve this controversy.

~~59.~~57.  Accordingly, a judicial declaration is appropriate so that FreightCar can confirm its right to modify, amend, or terminate the medical and life insurance benefits previously provided to the Retirees and the Defendant Class under the Plan.

## REQUEST FOR RELIEF

~~60.~~58.  WHEREFORE, FreightCar requests the following:

> (a) ~~(a)~~ A declaration that FreightCar, its designates, officers, directors, and agents may modify or terminate the medical and life insurance benefits provided to the Retirees and the Defendant Class by FreightCar;

AMECURRENT 716052288.1 28-Apr-15 15:03

(b)

      (b)    A declaration that FreightCar, its designates, officers, directors, and agents will not violate ERISA or the terms of the Plan in terminating the medical and life insurance benefits provided to the Retirees and the Defendant Class by FreightCar;

(c)

      (c)    An order permanently enjoining the USW, the Retirees, and the members of the Defendant Class from instituting any future legal action against FreightCar, its designates, officers, directors, or agents with respect to the subject matter of this action;

(d)

      (d)    such additional relief as may be appropriate.

~~Dated:  March 1, 2014~~                    ~~Respectfully submitted,~~

~~FREIGHTCAR AMERICA, INC.~~

~~/s/ Kirk Watkins~~
~~One of its Attorneys~~

Dated:  April 28, 2015                    Respectfully submitted,

**FREIGHTCAR AMERICA, INC.**

*/s/ Samuel P. Myler*
One of its Attorneys

James Clark Munro II
Michael J. Parrish, Jr.
Ronald P. Carnevali, Jr.
~~SPENCE, CUSTER, SAYLOR, WOLFE & ROSE, LLC~~
SPENCE, CUSTER, SAYLOR, WOLFE & ROSE, LLC
AmeriServ Financial Building, P.O. Box 280
Johnstown, Pennsylvania 15907
T: (814) 536-0735
F: (814) 539-1423

Nancy G. Ross (*pro hac vice*)
~~Kirk Watkins~~Samuel P. Myler (*pro hac vice*)
~~MCDERMOTT WILL & EMERY~~MAYER BROWN LLP
~~227 West Monroe Street~~ 71 S. Wacker Drive

AMECURRENT 716052288.1 28-Apr-15 15:03

Chicago, Illinois 60606
T: (312) ~~372-2000~~ 782-0600
F: (312) ~~984-7700~~ 701-7711

**ATTORNEYS FOR FREIGHTCAR AMERICA, INC.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this ~~1st~~28th day of ~~March, 2014~~April, 2015. Any other counsel of record will be served by facsimile transmission and/or first class mail.

/s/ ~~Kirk Watkins~~ *Samuel P. Myler* _____

~~Kirk Watkins~~

Samuel P. Myler