IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

|  |  |
|---|---|
| ANTHONY J. ZANGHI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FREIGHTCAR AMERICA, INC., *et al.*,<br><br>Defendants. | No. 3:13-CV-00146<br><br>Hon. Kim R. Gibson |

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs, Anthony J. Zanghi, Kenneth J. Sowers, Dominic McCuch, James Hohman, and Darrell Shetler, individually and as representatives of the certified plaintiffs' class (Class Representatives"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("the Union"), and Defendants, FreightCar America, Inc., Johnstown America Corporation,[1] and Johnstown America Corporation USWA Health & Welfare Plan (collectively, "FreightCar"), submit this memorandum in support of their Joint Motion for Preliminary Approval of Settlement.

## INTRODUCTION

For well over a decade, the parties have disputed whether FreightCar has the right to modify certain post-retirement welfare benefits previously provided to the Class. This dispute has led to multiple lawsuits and years of costly litigation in various fora. The parties have now reached a fair, reasonable, and adequate settlement ("the Settlement Agreement"), which, with

---

[1] References herein to "FreightCar" include the prior corporate entities Johnstown America Industries, Inc. and Johnstown America Corporation ("FreightCar").

this Court's approval, will finally resolve their long-running disagreement and will provide class

members with a net recovery of over $30 million.  Plaintiffs and FreightCar respectfully request

that the Court preliminarily approve the Settlement Agreement, certify the already-certified

liability class for purposes of this settlement, authorize notice to the class members, and enter the

proposed schedule for final approval of the settlement.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

        A.      ***The Underlying Class Actions***

While the pending actions were filed in 2013, the underlying dispute first arose over a

decade ago.  In 2002, FreightCar modified its employee benefit plans to eliminate the post-

retirement medical and life insurance benefits ("Health and Welfare Benefits") offered to certain

former Union employees and to cap its Health and Welfare Benefits premium payments for all

others.  The Union and the affected individuals ("the Deemer Plaintiffs") responded by filing

Geraldine Deemer, et al. v. Johnstown America Corp., No. 02-cv-806 (W.D. Pa. 2002)

("Deemer"), and later, United Steelworkers of America AFL-CIO-CLC, Reggie Britt, et al. v.

Johnstown America Corporation, No. 03-CV-1298 (W.D.Pa.) ("Britt"), filed in 2003; and

Sowers v. FreightCar America. Inc., No. 07-CV-201 (W.D.Pa.) ("Sowers"), filed in 2007.

The Deemer and Britt plaintiffs claimed, as Plaintiffs claim here, that FreightCar could not

modify or terminate their Health and Welfare Benefits without first obtaining the Union's

consent, which they alleged FreightCar failed to do.

Prior to discovery in Deemer, the parties filed cross-motions for summary judgment,

which were denied.  The parties then proceeded to discovery, which included approximately

twenty depositions, the exchange of extensive written discovery, and the production of thousands

of documents.

Following discovery, the parties began working towards a potential settlement with the assistance of mediator Louis Kushner, who was certified by the American Arbitration Association.  In late 2004, the parties reached an agreement—albeit a temporary one.  In exchange for dismissal of Deemer and Britt by the Union and the certified classes, FreightCar agreed to make fixed monthly contributions towards the retirees' medical benefits until November 30, 2012, and to provide each retiree class member life insurance.  If, after November 30, 2012, FreightCar chose to stop the agreed-to contributions towards the retirees' medical benefits, the parties could return to litigation.  The settlement provided that in any re-filed litigation, the parties could make full use of the discovery produced in Deemer.  When the Sowers litigation settled in 2008, the Sowers class members that had attained the requisite years of service pursuant to that settlement received the same retiree welfare benefits agreed to in the Deemer and Britt settlements.

## B.        The Instant Litigation

In the middle of 2011, counsel for FreightCar and Plaintiffs began negotiations in an effort to reach a new agreement which would replace the Deemer settlement as of November 30, 2012.  These negotiations continued approximately two years, but ultimately, were unsuccessful.  On July 9, 2013, FreightCar informed Plaintiffs' counsel that it would discontinue the contributions it was making for retiree medical benefits and cease paying life insurance after October 1, 2013.  Thereafter, both FreightCar and Plaintiffs filed suit in the Northern District of Illinois and this Court, respectively.  The Northern District of Illinois subsequently transferred FreightCar's suit to this Court, where it was consolidated with Plaintiffs' action ("the Instant Litigation").

The claims at issue in the Instant Litigation are substantively identical to the claims before the Court in Deemer.  Plaintiffs claim that FreightCar's refusal to provide post-retirement

medical and life insurance benefits violates both the Employee Retirement Income Security Act § 502(a)(1)(B) and the Labor-Management Relations Act § 301.  They allege that FreightCar agreed in 1991 that these benefits would continue unchanged throughout each class member's retirement unless the Union consented to FreightCar's modification or termination of benefits. FreightCar denies having ever entered into such an agreement, asserts that it has always retained the right to modify or eliminate the benefits at issue, and asserts that it nevertheless satisfied any conditions that Plaintiffs claim needed to be satisfied prior to making such changes.

Soon after filing the Instant Litigation, the parties agreed to attend mediation in an effort to resolve their dispute.  That mediation, which was conducted by Hon. Morton Denlow (Ret.), was unsuccessful.  The Court thereafter entered a scheduling order, which allowed the parties ninety days to conduct discovery and set deadlines for filing motions for summary judgment. During discovery in this discovery period the parties supplemented the already extensive discovery produced during *Deemer*.

On July 17, 2014, the parties filed cross-motions for summary judgment, which were accompanied by extensive briefing, statements of fact, and testimonial and documentary evidence obtained through discovery.  In a 55-page opinion, the Court denied the parties' motions, identified significant factual questions, and ordered that the case to proceed to trial. Thereafter, in the months leading up to trial, the parties filed a variety of evidentiary motions and pretrial briefs.

In the midst of trial preparation, the parties again renewed their discussions regarding a potential settlement of their dispute.  Throughout the month of August 2015, the parties, through their respective counsel, negotiated at arm's length and exchanged numerous settlement offers. The Plaintiffs' representatives in these negotiations had participated in the previous negotiations,

both in earlier litigation and in the negotiations immediately prior to the Instant Litigation.

Given the long tenure of class counsel and counsel for the Union in representing Plaintiffs in

connection with this dispute, they had become intimately familiar with the strengths and

weaknesses of their claims.  The same holds true for FreightCar's counsel.

Less than a week before trial, the parties reached an agreement in principle, which they

subsequently reduced to a signed term sheet.  On August 20, 2015, the parties notified the Court

of their agreement and requested that it cancel the trial.  On August 26, 2015, the Court entered

an order to that effect.

### C.        The Proposed Settlement Agreement

The material terms of the Settlement Agreement, a copy of which is attached as Exhibit

A,[2] are as follows:

- The Union will create a voluntary employees' beneficiary association trust fund ("the VEBA") for the purpose of providing class members post-retirement medical and life insurance benefits.[3]

- FreightCar will make a one-time contribution to the VEBA of $31,450,000.

- Subject to Court approval, FreightCar will pay an award for attorneys' fees and costs to Class Counsel in an amount not to exceed $1,300,000.  In the event that the Court approves an award of less than $1,300,000, FreightCar will pay the difference between that award and $1,300,000 as an additional payment to the VEBA.

- In the event that FreightCar fails to make the aforementioned payments prior to February 16, 2016, interest on the unpaid amounts shall accrue at 5% per annum, with interest not to exceed $250,000.

- Plaintiffs will fully and finally release all claims against FreightCar related to the Instant Litigation, or the Deemer, Britt, and Sowers lawsuits, as set forth more fully in the Proposed Settlement.

---

[2] The Settlement Agreement filed contemporaneously with this brief, and attached hereto as Exhibit A, is unexecuted.  The parties intend to file an executed, but otherwise identical, copy of the Settlement Agreement within twenty-four hours of this filing.

[3] The VEBA Trust Agreement is attached hereto as Exhibit C.  The parties' VEBA participation agreement is attached hereto as Exhibit D.

- Plaintiffs will assume responsibility for all administrative obligations related to the administration of the VEBA and the administration of the Settlement.

The Settlement Agreement provides for a fair resolution of the parties' long-running dispute. Both parties have recognized the uncertainties associated with trial and the Settlement Agreement reflects those risks.

## II.   THE COURT SHOULD CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT

The Court has already certified the following class as to liability:

> (1) former FreightCar employees that were represented by the USW at the time of their retirement from FreightCar, and who upon retirement received or were eligible to receive medical and life insurance benefits under the JAC USWA Health and Welfare Plan (the "Plan"); and (2) those individuals who received or were eligible to receive medical and life insurance benefits under the Plan as a spouse, surviving spouse, or dependent of an aforementioned former FreightCar employee.

Dkt. #107. The Court certified the following claims:

> Whether FreightCar's termination or reduction of retiree medical and life insurance benefits violates collectively bargained obligations owed to class members, and is actionable under Section 301 of the LMRA, 29 U.S.C. § 185(a).

> Whether FreightCar's termination or reduction of the terms of the employee welfare benefit plan through the reduction of class members' retiree medical benefits is actionable under ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

> Whether FreightCar may terminate or reduce the medical and life insurance benefits previously provided to class members without violating Section 301 of the LMRA, 29 U.S.C. § 185(a), ERISA 502(a)(l)(B), 29 USC 1132(a)(l)(B), or any other federal or state law.

*Id.* The Court also concluded that the class satisfied the four requirements of Rule 23(a) and fell within one of the three subdivisions of Rule 23(b), and that the firm of Feinstein Doyle Payne & Kravec should be appointed as Class Counsel under Rule 23(g)(1)(A). Based upon the Court's finding that Rule 23(a), Rule 23(b) and Rule 23(g) were satisfied for purposes of determining

liability, the Court should certify the proposed class and claims for purposes of approving the settlement.

### III.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

The procedure and requirements for settling class action litigation are set forth in Federal Rule of Civil Procedure 23(e).  Settling class action litigation pursuant to Rule 23 generally involves two stages: (1) preliminary approval and notice to class members of the putative settlement; and (2) final approval following a "fairness hearing" in which the Court determines whether the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

The standard for obtaining preliminary approval of a proposed class action settlement is "far less demanding" than the standard that must be met in order to obtain final approval. *Curiale v. Lenox Grp. Inc.*, 2008 WL 4899474, at *9 n.4 (E.D. Pa. Nov. 14, 2008).  At the preliminary approval stage, the Court is strictly concerned with identifying "obvious deficiencies" that need to be addressed before notice is distributed to class members and the Court conducts a final approval hearing.  *Vines v. Covelli Enterprises*, 2012 WL 5992114, *6 (W.D. Pa. Nov. 20, 2012).  Any non-obvious deficiencies are typically identified and addressed during the second stage of the settlement process.  As explained below, the proposed settlement is devoid of obvious deficiencies, and thus, the Court should grant preliminary approval.  *Id.*

#### 1.     *The Proposed Settlement is Not "Obviously Deficient"*

The Court's primary focus at the preliminary approval stage is whether the proposed settlement contains any "obvious deficiencies."  *Mehling v. New York Life Ins.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007).  Identifying obvious deficiencies does not require the Court to engage in fact finding.  Nor is the Court expected to calculate settlement value, estimate the likelihood of success, or consider the defendant's potential liability.  *See In re Automotive Refinishing Paint*

*Antitrust Litigation*, 2004 WL 1068807, *1 (E.D. Pa. May 11, 2004) ("In evaluating a settlement

for preliminary approval, the court need not reach any ultimate conclusions on the issues of fact

and law that underlie the merits of the dispute.")  Instead, it is sufficient to determine whether the

proposed settlement "appears to fall within the range of possible approval." *Id*.  That is to say,

whether "there is a conceivable basis for presuming that the standard applied for final approval—

fairness, adequacy, and reasonableness—will be satisfied." *Glaberson v. Comcast Corp.*, 2014

WL 708539, *5 (E.D. Pa. Dec. 12, 2014).

The Proposed Settlement clearly falls within the range of possible approval.  FreightCar

has agreed to contribute at least $31,450,000 toward the class members' Health and Welfare

Benefits.  The Union will then use these funds to secure benefits for approximately 675

 class members.  The settlement amount, which on a per capita basis exceeds $45,000 per class

member, compares favorably to settlements approved in similar cases involving retiree medical

benefits.  *See, e.g.*, *Redington v. Goodyear Tire & Rubber Co.*, 2008 WL 3981461, *5 (Aug. 22,

2008 N.D. Ohio) (estimated per capita VEBA contribution of approximately $33,333); *In re*

*Unisys Corp. Retiree Medical Benefits ERISA Litigation*, 1994 WL 702638, *4 (E.D. Pa. Nov. 3,

1994) (estimated inflation adjusted per capita VEBA contribution of approximately $31,000).

Taking into account the inherent uncertainty of trial, the proposed settlement is clearly within the

range of possible approval and presumptively reasonable.

### 2.     *The Proposed Settlement is the Product of Good Faith, Arm's-Length Negotiations*

Another key factor in deciding to grant preliminary approval is whether the settlement

was negotiated in good faith and at arm's length.  *See In re CIGNA Corp. Sec. Litig.*, No. 02-

8088, 2007 WL 2071898, at *2 (E.D.Pa. July 13, 2007).  Here, the parties have engaged in

settlement discussions on a number of occasions throughout the long history of their dispute.

These negotiations include: (1) a successful mediation prior to trial in *Deemer*; (2) lengthy negotiations both before and after the expiration of the settlement agreements in the prior class actions; (3) another attempt at mediation during the pendency of this action; and (4) weeks of pretrial negotiations that resulted in the instant proposed settlement. During these negotiations, counsel zealously represented the interests of their respective clients, elicited the help of third-party neutrals, and consulted with actuaries and other benefits professionals. The significant amount of time and resources dedicated to the parties' negotiations is strong evidence that the Proposed Settlement was negotiated in good faith and at arm's length.

### 3. *The Proposed Settlement was Negotiated After Exhaustive Discovery*

At the preliminary approval stage, courts also often consider whether, and to what extent, the parties have engaged in discovery. *See, e.g.*, *Leap v. Yoshida*, 2015 WL 619908, *3 (E.D. Pa. Feb. 12, 2015) ("The preliminary approval determination requires the court to consider whether . . . there was sufficient discovery[.]"). This factor is relevant to the Court's inquiry because discovery allows litigants to vet the factual bases for their positions, which enables them to more accurately determine the settlement value of their claims. *See, e.g.*, *Radosti v. Envision EMI*, 717 F. Supp. 2d 37, 62 (D.D.C. 2010) (noting that settlement of class actions generally requires counsel to have "sufficient information, through adequate discovery, to reasonably assess the risks of litigation *vis-a-vis* the probability of success and range of recovery."). Here, the parties have engaged in extensive discovery. In the aggregate, they deposed approximately twenty witnesses in Deemer and an additional four witnesses in the Instant Litigation. Extensive written discovery was exchanged, multiple third-parties were subpoenaed, and the parties produced and reviewed thousands of documents. The proposed settlement is based on the parties' independent evaluation of the facts uncovered through the extensive discovery conducted in this case.

**4.**     *The Proposed Settlement was Negotiated by Experienced Counsel*

Class counsel's experience litigating similar class actions is an additional factor weighing in favor of preliminary approval.  *See, e.g.*, *Weissman v. Philip C. Gutworth, P.A.*, 2015 WL 333465, \*2 (D.N.J. Jan. 23, 2015) ("In making its preliminary evaluation, the court generally considers whether . . . the proponents of the settlement are experienced in similar litigation."). Plaintiffs' counsel, Feinstein, Doyle, Payne, and Kravec, LLC ("FDPK"), has served as class counsel and negotiated settlements in a large number of a similar lawsuits.  *See, e.g. UAW v. GM*, 497 F.3d 615 (6th Cir. 2007); *Crown Cork & Seal v. USW*, 2004 U.S. Dist. LEXIS 760 (W.D. Pa. 2004); *Pringle v. Continental Tire North America*, 2007 WL 2236880 (N.D. Ohio July 31, 2007); *Rexam, Inc. v. United Steelworkers of America*, 2003 WL 22477858 (D. Minn. Oct. 30, 2003).  The Sixth Circuit stated as follows in 2007 with respect to William Payne, who was involved in all settlement negotiations in this case:

> William Payne was competent to represent each class and did not have a conflict of interest. Payne has practiced labor law for almost 24 years, has litigated almost 50 retiree healthcare class actions at the trial and appellate levels, has authored numerous articles on the law of retirement benefits, has contributed to BNA's treatise on employee benefits and heads the American Bar Association's Subcommittee for Benefit Claims and Individual Rights.  In view of Payne's background, both classes would have been hard pressed to find someone with greater "experience in handling class actions ... and claims of the type asserted in the action" or an attorney with more "knowledge of the applicable law." Fed.R.Civ.P. 23(g)(1)(C)(i).

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007).  Class Counsel's expertise with regard to retiree medical benefits litigation provides added assurance to the Court that the Proposed Settlement is reasonable.

10

**IV.**     **THE COURT SHOULD AUTHORIZE THE PROPOSED NOTICE AND NOTICE PROCEDURE**

After initially approving a proposed class settlement, but before giving final approval,

Federal Rule of Civil Procedure 23(e)(1) requires the Court to "direct notice in a reasonable

manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

Accordingly, the parties request that the Court approve the proposed notice materials and the

proposed notice procedure.

"Generally speaking," notice is sufficient if it "enable[s] class members to make

informed decisions on whether they should take steps to protect their rights, including objecting

to the settlement or, when relevant, opting out of the class." *In re Baby Products Antitrust*

*Litigation*, 708 F.3d 163, 180 (3d Cir. 2013). The proposed notice, which is attached as Exhibit

B, satisfies this requirement. It clearly explains the nature of the claims at issue, the history of

the litigation, the risks inherent at trial, the amount of the settlement, and the basic parameters of

the benefits class members would receive from the VEBA if the settlement were approved. It

also explains that, if approved, class members will be barred from filing suit in the future.

Finally, it describes what steps the class members must take in order to object to the proposed

settlement.

With respect to the notice method, the parties intend to notify the class members by first-

class mail. This method is sufficient in this case. First, the majority of class members are

already aware of the litigation, as evidenced by the hundreds of affidavits submitted in support of

Plaintiffs' motion for a preliminary injunction. (*See* Dkt. Nos. 43-44.) Furthermore, Plaintiffs'

counsel has conducted meetings to discuss the litigation, to which all retiree class members have

been invited. In the unlikely event that certain class members are presently unaware of the

litigation and the proposed settlement, these individuals will be notified of the settlement by

direct mailings, which will be sent to all class members.  FreightCar currently maintains mailing

addresses for the entire class and communicates regularly with many class members regarding

pension matters.  To the best of FreightCar's knowledge and belief, its addresses for the class

members are up-to-date and accurate.  Thus, Plaintiffs anticipate that mailings will reach most, if

not all, of the individual members of the class.  Finally, an overwhelming percentage of the class

continues to reside in and around Johnstown, Pennsylvania, thereby making it more likely that

they will be apprised of the settlement by word-of-mouth.

## V.   THE COURT SHOULD ENTER THE PROPOSED SCHEDULE FOR FILING OBJECTIONS AND CONDUCTING A FINAL APPROVAL HEARING

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court must hold a

final approval hearing after the class members have received notice and have had the opportunity

to file any objections to a proposed class settlement.  In light of this requirement, the Parties have

proposed the following schedule and deadlines:

- September 28, 2015 – Hearing on Motion for Preliminary Approval of Settlement

- October 5, 2015 – Deadline for Mailing Notice of Settlement to Class Members

- Forty-Five (45) Days After Mailing Class Notice – Deadline for Class Members to File Objections to Proposed Settlement

- Seven (7) days before deadline for filing Objections – Deadline for Class Counsel's motion for fees and costs

- Twenty-Eight (28) Days After Deadline for Filing Objections – Deadline for Filing: (1) Motion for Order Granting Final Approval of Class Action Settlement; and any (2) Responses to Class Settlement Objections

- January 5, 2016 (or as soon thereafter as is convenient for the Court) – Hearing on Motion for Final Approval

Under the proposed schedule, the parties will send notice of the settlement over ninety-

five days prior to the fairness hearing.  The proposed schedule also allows the class forty-five

days to prepare and file objections.  Courts have recognized that such notice comports with due

process.  *See, e.g. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (finding

notice mailed 31 days prior to objection deadline sufficient.); *Fidel v. Farley*, 534 F.3d 508, 515

(6th Cir. 2008) (upholding forty-six day notice period and finding that courts have often upheld

shorter notice periods).  Thus, the parties' proposed and agreed schedule properly balances the

rights of potential objectors against the class's interest in obtaining the benefits of the settlement

without unnecessary delay.

## **CONCLUSION**

For the reasons discussed above, the parties request that the Court grant their Joint

Motion for Preliminary Approval of Settlement and enter their proposed order.[4]

---

[4] The proposed settlement is not in any way binding on the parties until approved by the Court.  In the event that the Court does not approve the Proposed Settlement, the parties shall return to the legal positions they occupied prior to filing their Motion for Preliminary Approval and the execution of their term sheet.

Dated:  September 21, 2015

/s/ *Samuel P. Myler*

Nancy G. Ross (*pro hac vice*)
Vince J. Connelly (*pro hac vice*)
Brian D. Netter (*pro hac vice*)
Samuel P. Myler (*pro hac vice*)
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
T: (312) 782-0600
F: (312) 701-7711


James Clark Munro II
Michael J. Parrish, Jr.
Ronald P. Carnevali, Jr.
SPENCE, CUSTER, SAYLOR, WOLFE & ROSE,
LLC
AmeriServ Financial Building, P.O. Box 280
Johnstown, Pennsylvania 15907
T: (814) 536-0735
F: (814) 539-1423


**Attorneys for Defendants**

/s/ *Pamina Ewing*

William T. Payne
wpayne@fdpklaw.com
Feinstein Doyle Payne & Kravec, LLC
*Pittsburgh North Office*
12 Eastern Avenue
Pittsburgh, PA 15215
(412) 492-8797

Pamina Ewing
pewing@fdpklaw.com
Joel R. Hurt
jhurt@fdpklaw.com
Feinstein Doyle Payne & Kravec, LLC
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA 15219
(412) 281-8400

**Counsel for Plaintiffs Anthony J. Zanghi,
Kenneth J. Sowers, Dominic McCuch, James
Hohman, and Darrell Shetler  and the Class**

/s/ *Joseph P. Stuligross*

Joseph P. Stuligross
Associate General Counsel
jstuligross@usw.org
United Steelworkers
Five Gateway Center, Suite 807
Pittsburgh, PA 15222
(412) 562-2526

**Counsel for Plaintiff United Steel, Paper and
Forestry, Rubber, Manufacturing, Energy,
Allied Industrial and Service Workers
International Union, AFL-CIO/CLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service have been served with a copy of the foregoing document via the Court's CM/ECF system this 21st day of September, 2015.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

*/s/ Samuel P. Myler*

Samuel P. Myler