# **EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# JOHNSTOWN DIVISION

| | |
|---|---|
| ANTHONY J. ZANGHI, KENNETH J. SOWERS, DOMINIC MCCUCH, JAMES HOHMAN, DARRELL SHETLER on behalf of themselves and others similarly situated, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, <br><br> Plaintiffs, <br><br> v. <br><br> FREIGHTCAR AMERICA, INC., JOHNSTOWN AMERICA CORPORATION, and JOHNSTOWN AMERICA CORPORATION USWA HEALTH & WELFARE PLAN, <br><br> Defendants. | Civil Action No.: 13-146 <br><br> Class Action <br><br> Jury Trial Demanded <br><br> Electronically Filed <br><br> Judge Kim R. Gibson |

**IMPORTANT NOTICE ABOUT YOUR HEALTH INSURANCE AND LIFE INSURANCE BENEFITS FROM FREIGHTCAR AMERICA, INC.**

**You should read this notice carefully if you (or a member of your family):**

1. Were formerly employed by Johnstown America Inc. or FreightCar America Inc. (jointly referred to as "FreightCar") at the railcar facility in Johnstown, Pennsylvania ("Johnstown Plant") and were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial And Service Workers International Union, AFL-CIO/CLC ("USW") at the time of your retirement from FreightCar; and

2. Upon retirement, you received or were eligible to receive medical and life insurance benefits from FreightCar; OR

3. Received or were eligible to receive medical and life insurance benefits as a spouse, surviving spouse, or dependent of an aforementioned former FreightCar employee.

**THIS NOTICE CONCERNS A PROPOSED CLASS ACTION SETTLEMENT.**

**A FEDERAL COURT AUTHORIZED THIS NOTICE.**

**IT IS NOT A SOLICITATION FROM A LAWYER.**

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ................................................................................................................
    1. Why did I get this notice package?
    2. What is the lawsuit about?
    3. Why is this a class action?
    4. Why is there a settlement?
WHO IS IN THE SETTLEMENT ................................................................................................
    5. How do I know if I am part of the settlement?
    6. Do I need to do anything to join the case and share in the settlement?
    7. Can I exclude myself from the settlement?
THE SETTLEMENT BENEFITS – WHAT YOU GET ................................................................
    8. What does the settlement provide?
    9. When will the settlement be approved?
    10. What am I giving up in the settlement?
THE LAWYERS REPRESENTING YOU ....................................................................................
    11. Do I have a lawyer in this case?
    12. How will the lawyers be paid?
OBJECTING TO THE SETTLEMENT .........................................................................................
    13. What does it mean to object?
    14. How do I tell the Court that I don't like the settlement?
THE COURT'S FAIRNESS HEARING .........................................................................................
    15. When and where will the Court decide whether to approve the settlement?
    16. Do I have to go to the fairness hearing?
    17. May I speak at the hearing?
IF YOU DO NOTHING ..................................................................................................................
    18. What happens if I do nothing at all?
GETTING MORE INFORMATION ...............................................................................................
    19. Are there more details about the settlement?
    20. How do I get more information?

BASIC INFORMATION

## 1. Why did I get this notice package?

You received this notice package because you or someone in your family:

1. Were formerly employed by FreightCar at the Johnstown Plant and were represented by the USW at the time of your retirement from FreightCar; and

2. Upon retirement, you received or were eligible to receive medical and life insurance benefits from FreightCar; OR

3. Received or were eligible to receive medical and life insurance benefits as a spouse, surviving spouse, or dependent of an aforementioned former FreightCar employee.

You were sent this notice because you have the right to know about a proposed settlement of a class action lawsuit and about your options before the Court decides whether to approve the settlement. If the settlement is approved, your retiree medical and life insurance benefits will be provided by an independent trust known as a VEBA, run by trustees not affiliated with FreightCar, and the VEBA Trustees will determine the level and duration of your benefits in accordance with the provisions of the Settlement as described in this Notice. This is described further in the answer to question 8, below.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how those benefits will be provided.

The Court in charge of this case is the United States District Court for the Western District of Pennsylvania, Johnstown Division, and the case is known as Zanghi v. FreightCar America, Inc. The persons who sued are called Plaintiffs and the entities they sued are called Defendants. Plaintiffs and Defendants together are called the "Parties."

## 2. What is this lawsuit about?

The lawsuit initially arose out of FreightCar's 2002 termination of retiree health insurance and life insurance benefits. FreightCar takes the position that it was entitled to terminate these benefits.

In response to FreightCar's termination of benefits, several retirees together with the USW in 2002 filed a class action lawsuit known as United Steelworkers of America, AFL-CIO-CLC, Geraldine Deemer, and Darrell Shetler v. Johnstown America Corporation, No. 02-CV-806 (W.D.Pa.) ("Deemer"). The Deemer class members encompassed all retirees who retired from FreightCar's Johnstown Plan after a 1991 sale from Bethlehem Industries ("Bethlehem") and who were at least 43 years old at the time of that sale, as well as their spouses and surviving

2

spouses.

In 2003, different retirees and the USW filed <u>United Steelworkers of America AFL-CIO-CLC, Reggie Britt, et al. v. Johnstown America Corporation</u>, No. 03-CV-1298 (W.D.Pa.) ("<u>Britt</u>"). <u>Britt</u> class members also had worked at the Johnstown Facility, but, unlike the <u>Deemer</u> plaintiffs, they were not at least 43 years old at the time of sale and did not have their benefits terminated until 2003.

Negotiations to settle the <u>Deemer</u> and <u>Britt</u> litigation resulted in the <u>Britt</u>-<u>Deemer</u> Settlement Agreement, which the Court approved. As to retiree medical benefits, the <u>Britt</u>-<u>Deemer</u> Settlement Agreement put a plan in place for both the <u>Deemer</u> and <u>Britt</u> classes which required that FreightCar make $700 monthly contributions for households including a class member not eligible for Medicare and $450 monthly contributions for households including a class member eligible for Medicare. These contributions were to last at least through November 2012. As to life insurance benefits, the Settlement Agreement provided that "Defendant FreightCar will reinstate the retiree life insurance program and will provide future benefits consistent with that Program."

In 2007, after FreightCar announced that it was closing the Johnstown Plant, still other retirees and the USW filed <u>Sowers v. FreightCar America. Inc.</u>, No. 07-CV-201 (W.D.Pa.) ("<u>Sowers</u>") The <u>Sowers</u> plaintiffs were active employees of the Johnstown Plant who were close to attaining eligibility for retirement benefits. The parties reached a settlement in 2008 under which the <u>Sowers</u> class members received the same health and life insurance benefits as the <u>Deemer</u> and <u>Britt</u> class members.

The settlement agreements in <u>Deemer</u>, <u>Britt</u>, and <u>Sowers</u> allowed retirees and the USW to refile the litigation in the event FreightCar ceased providing retiree health and life insurance benefits. On July 8, 2013, FreightCar filed a declaratory judgment action in the United States District Court for the Northern District of Illinois, seeking a declaration that FreightCar had the legal right to terminate retiree welfare benefits. On July 9, 2013, FreightCar sent counsel for the USW a copy of the Illinois complaint and stated that effective October 1, 2013, it would cease all company contributions provided under the Settlement Agreement for retiree medical coverage and no longer provide the life insurance benefits. After receiving this notice from FreightCar, Class Representatives and the USW filed their Complaint in the United States District Court for the Western District of Pennsylvania on July 9, 2013. Plaintiffs asserted that the termination of retirees' health and life insurance benefits violates Section 301 of the LMRA and Section 502 of the Employee Retirement Income Security Act (ERISA). The Pennsylvania Court denied FreightCar's Motion to Dismiss or Transfer the Pennsylvania case, and the Illinois court thereafter transferred the Illinois action to Pennsylvania.

Effective November 1, 2013, FreightCar terminated all retiree health and life insurance benefits.

The Court certified this case as a class action as to the merits of Plaintiffs' claims, denied the parties' cross motions for summary judgment, and scheduled the case for trial to begin on August 25, 2015. The parties reached a proposed settlement and executed a term sheet on August 20, 2015.

### 3. Why is this a class action?

In a class action, one or more persons called Class Representatives sue on behalf of people who have similar claims. All of these people are a Class or Class Members. One court resolves the issues for all Class Members and all Class Members are bound by the court decision or settlement. United States District Judge Kim R. Gibson is in charge of this class action.

### 4. Why is there a settlement?

In the interest of a timely resolution, and to avoid the costs and risk of a trial and an appeal to determine issues relating to the appropriate amount of damages or other remedies, the Parties believe that settlement is in the best interest of Class Members. Moreover, by agreeing to a settlement, Class Members will get future benefits. If the case had gone to trial, a court could have determined that Class Members were not entitled to any benefits.

## WHO IS IN THE SETTLEMENT

### 5. How do I know if I am part of the settlement?

The Court has conditionally certified this suit as a class action for purposes of this settlement, and the Settlement Class consists of persons who fit the following definition:

> (1) former FreightCar employees that were represented by the USW at the time of their retirement from FreightCar, and who upon retirement received or were eligible to receive medical and life insurance benefits under the FreightCar-USWA Health and Welfare Plan (the "Plan"); and (2) those individuals who received or were eligible to receive medical and life insurance benefits under the Plan as a spouse, surviving spouse, or dependent of an aforementioned former FreightCar employee.

### 6. Do I need to do anything to join the case and share in the settlement?

No. You do not need to take any action to join the case. If the proposed settlement is approved by the Court, and you are a member of the Class, your retiree medical and prescription drug benefits will continue as described in the responses to questions 1 and 8.

### 7. Can I exclude myself from the settlement?

No, you do not have the option to exclude yourself (or "opt out") of the class. If the settlement is approved, you will be bound by any judgments or orders that the Court enters in this case, you will be deemed to have released FreightCar from any and all claims that were or could have been asserted in this case, and you will not be able to sue FreightCar on those claims. Although you

cannot exclude yourself from the case, you can object to the settlement and ask the Court not to approve it.

THE SETTLEMENT BENEFITS—WHAT YOU GET

| 8. What does the settlement provide? |
|---|

**The VEBA**

In exchange for a release of the Class's claims to have retiree health and life insurance benefits provided by FreightCar, the Settlement provides for retiree health and welfare benefits for the Class Members funded through a voluntary employees' beneficiary association ("VEBA"), which is a trust that will be administered independently of FreightCar.

FreightCar will contribute approximately $31.45 million to the VEBA. The assets in the VEBA will be invested and used solely to pay for retiree benefits and administrative expenses of the VEBA. By law, funds contributed to the VEBA may never be returned to FreightCar. FreightCar will no longer provide any retiree healthcare benefits. The VEBA will be administered by a Committee of fiduciaries that have no ties to FreightCar and are required by law to administer the VEBA prudently and solely in the interest of you and other Class Members. The VEBA Committee will evaluate benefit options and make benefit design decisions, taking into account needs of Class Members and the VEBA's resources. None of the VEBA Committee members is a representative of FreightCar, and none is a representative of the USW.

**Reimbursement For Certain Past Healthcare-Related Expenses**

In addition to providing ongoing insurance benefits as described below, the Settlement also reimburses retirees and surviving spouses up to a certain amount for past healthcare-related expenses. The maximum amount of reimbursement that retirees and surviving spouses can receive depends upon whether they were eligible for Medicare during the 29-month period beginning November 1, 2013 and ending March 31, 2016.

The VEBA Committee will establish the timing and procedures for providing reimbursement, and will make every effort to deliver payment promptly, consistent with the VEBA Committee's fiduciary responsibilities and applicable law. The VEBA Committee will also seek to minimize the likelihood that retirees and surviving spouses will have to pay taxes on this payment and to minimize any impact on subsidies for which they may be eligible under the Affordable Care Act ("ACA") and/or under other government programs. However, it is possible that this payment will have an impact on subsidies and you may end up having to pay taxes on this payment. You will be required to submit documentation showing your unreimbursed healthcare expenses, including where applicable showing that you paid your Medicare Part B premiums.

**If you are a retiree or surviving spouse and were not eligible for Medicare before March 31, 2016**, you will be eligible to receive reimbursement of up to a total of $6,728.

**If you are a retiree or surviving spouse and were eligible for Medicare during the entire 29-month period beginning November 1, 2013 and ending March 31, 2016**, you will be eligible to receive reimbursement in the amount of $2,349. The sum will be paid directly to the individual upon the VEBA's receipt of appropriate documentation showing the payment of Medicare Part B premiums.

**If you are a retiree or surviving spouse and were eligible for Medicare for part but not all of the 29-month period beginning November 1, 2013 and ending March 31, 2016,** you will be eligible to receive both Medicare Part B reimbursement of $81 per month for each month that you were eligible for Medicare (with proof of Medicare Part B payments) and up to $232 for each month that you were not yet eligible for Medicare (under procedures to be established by the VEBA Committee). Here is an example of how this would work, using an individual who was pre-Medicare eligible for 24 of the 29 months. That individual would be eligible for up to a total of $5,568 ($232 x 24 months) for the period prior to Medicare eligibility. The individual would also receive a check for $405 ($81 x 5 months) for the Medicare-eligible period.

Amounts will be credited only to the retiree or the retiree's eligible surviving spouse. (Surviving spouse replaces the retiree under the Bethlehem Program of Hospital-Medical Benefits, the document which formed the basis for the litigation).

**Benefits Effective April 1, 2016**

**Healthcare Benefits For Class Members Not Yet Eligible For Medicare**

Effective April 1, 2016 (or as soon as possible after the Settlement is final), each pre-Medicare eligible Class Member will be eligible to enroll in a VEBA pre-Medicare health plan provided that that Class Member is not otherwise eligible, upon application, to enroll in (1) health coverage subsidized by the Health Coverage Tax Credit (HCTC); (2) health coverage subsidized under the ACA; or (3) other employer-sponsored coverage, whether through the Class Member's or Class Member's spouse's employer.

Class Members eligible to enroll in VEBA pre-Medicare health coverage shall pay 50% of the monthly premium, and the VEBA shall pay the remaining 50% of the monthly premium. Based on current premium amounts, the retiree portion for such coverage will be approximately $538 per month for retiree-only coverage and $1074 per month for family coverage. The program of benefits will cover most network services at the 80% level, subject to deductibles of $250 for individuals and $500 for families. The out of pocket maximum is $2,500 for individuals and $5,000 for a family. Office visits are covered with a $20 copayment ($35 for specialists). 30-day supplies of prescription drugs are covered at $10 for generics, $20 for preferred brands, and $40 for non-preferred brands, with a 90-day supply available by mail order at two times these costs.

**Healthcare Benefits For Class Members Eligible For Medicare**

Effective April 1, 2016 (or as soon as possible after the Settlement is final), the VEBA will offer all Class Members eligible for Medicare a comprehensive Medicare Advantage plan with prescription drug coverage. The VEBA will pay 70% of the cost, and the Medicare eligible

Class Member will pay 30% of the cost.  Based on current premium amounts, the retiree portion for such coverage (Freedom Blue) will be approximately $85 per month for each covered individual.  The VEBA also anticipates offering Advantra coverage through Coventry Health Care, but as of the date of this Class Notice, premium amounts for that coverage were not available. The program of benefits for both the Freedom Blue and Advantra will cover most network services at the 100% level, subject to a deductible of $100.  The out of pocket maximum is $3,400.  Office visits are covered with a $20 copayment ($30 for specialists).  30-day supplies of prescription drugs are covered at $10 for preferred generics, $20 for non-preferred generics, $50 for brand drugs, and $75 for specialty drugs, with a 90 day supply available by mail order at 2.5 times these costs.

**Healthcare Benefit Provisions Applicable To All Class Members**

The percentage that Class Members contribute for the cost of their health coverage may not be increased by the VEBA Committee before January 1, 2019.

**Death Benefit**

The VEBA will pay a $5,000 cash death benefit with respect to any retiree who died between November 1, 2013 and March 31, 2016 who had either a surviving spouse or a properly named beneficiary at the time of their death.  The benefit will be paid to the retiree's surviving spouse unless the VEBA receives a beneficiary designation, dated prior to the death of the deceased, naming a beneficiary other than the spouse.  If there is no surviving spouse and no properly completed beneficiary designation on file with the VEBA, no benefit will be paid.

Effective April 1, 2016 (or as soon as possible after the Settlement is final), the VEBA will offer a death benefit for each retiree in the amount of $5,000.  The VEBA will establish procedures for enrollment and beneficiary designation.

**Duration of Benefits**

The funding of the VEBA does not guarantee that retiree benefits will be provided for your lifetime.  However, the existing funding is projected to continue a significant number of years into the future.  How long the VEBA will be able to pay for those benefits, and at what levels, depends on various factors, including participant enrollment, investment results, rates of healthcare inflation, plan utilization and future benefit design changes.  As explained above, at least until 2019, the monthly contribution percentages for Class Members will be unchanged.

The effective date of benefits may need to be adjusted if final approval of the Settlement is delayed or if an appeal is filed. The Settlement is not effective until after final approval is granted and appeals, if any, have been exhausted.

The above description of the terms of the Settlement Agreement and the operation of the VEBA is only a summary.  The governing provisions are set forth in the Settlement Agreement (including its exhibits) and the Trust Document, which may be obtained from www.-- or Class Counsel, listed in Section 11 below.

| **9. When will the settlement be approved?** |
|---|

The Court will hold a hearing at [time] on [date] to decide whether to approve the settlement. It may take the Court several weeks after the hearing before it decides. If the Court approves the settlement, there may be appeals. If appeals are filed, it is uncertain how long it will take to resolve them. Please be patient.

| **10. What am I giving up in the settlement?** |
|---|

Under this settlement, Class Members will give up or "release" the right to sue FreightCar over any claim of entitlement to post-retirement healthcare and life insurance benefits. This includes any claims about the same events and subject matter involved in *this* case, including whether FreightCar's termination of retiree benefits in 2013 violated any collective bargaining agreement or ERISA, and any similar claims under state or federal law. This also includes any claim against FreightCar that any changes made regarding your healthcare and life insurance benefits violate any collective bargaining agreement or ERISA or any other law.

As explained in the Settlement Agreement, "Released Claims" means all claims, known or unknown, of any Class Member (or beneficiaries or assignees) or the Union (or any divisions, joint ventures and assigns, past or present directors, officers, employees, partners, members, principals, fiduciaries, administrators, agents, underwriters, insurers, co-insurers, reinsurers, attorneys, accountants, or auditors, banks or investment banks, associates, or personal or legal representatives, including the Steelworkers Health & Welfare Fund and the VEBA defined in Paragraph 1.30 and its Trustees), for any type of relief against the FreightCar Releasees for declaratory relief, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorney fees, litigation costs, or any other monetary remedy, as well as injunctive relief, restitution, or other equitable relief based on the following (potentially overlapping) categories of claims: (a) any and all claims for any Health and Welfare Benefits, including, but not limited to, any claims related to the structure, operation or administration of the VEBA; and (b) any and all claims for payment of medical benefits, major medical benefits, managed care benefits, prescription drug benefits, premium reimbursement, life insurance benefits, dental insurance benefits, or vision insurance benefits; and (c) any and all claims for declaratory or injunctive relief in opposition to FreightCar's asserted right to modify, reduce or terminate the Health and Welfare Benefits of the Class Members.

This means that even if you discover facts in the future that were not known at the time of the settlement which you think demonstrate further violations by FreightCar related to this case, you may not sue FreightCar. Each class member assumes the risk that he or she may discover new information. Even if new information is discovered, the settlement will be binding.

### THE LAWYERS REPRESENTING YOU

| **11. Do I have a lawyer in this case?** |
|---|

The Court has appointed the following lawyers to represent the Class:

| |  |
|---|---|
| Pamina Ewing<br>William T. Payne<br>Feinstein Doyle Payne & Kravec, LLC<br>429 Forbes Avenue<br>Allegheny Building, 17th Floor<br>Pittsburgh, Pennsylvania 15219 | |

These lawyers are called Class Counsel. You will not be charged fees or expenses by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 12. How will the lawyers be paid?

Under the proposed settlement, FreightCar will not oppose Class Counsel's application for attorneys' fees and expenses so long as Class Counsel seeks no more than $1.3 million. Class Counsel's motion for attorneys' fees and expenses will be filed before the objections deadline. In addition to objecting to the proposed settlement, any Class Member may also advise the Court about any objections he or she has to the adequacy of representation by Class Counsel or to Class Counsel's motion for attorneys' fees and expenses.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it, including the adequacy of the representation of the Class by the named plaintiffs and Class Counsel; the fairness of the settlement; and/or the fees and expenses sought by Class Counsel.

### 13. What does it mean to object?

Objecting is simply telling the Court that you do not like something about the settlement. It will not have any bearing on your right to receive benefits under the settlement if the settlement is approved.

### 14. How do I tell the Court that I don't like the settlement?

You can object to the settlement if you dislike any part of it. You also can object to Class Counsel's application for fees and expenses. You can give reasons why you think the Court should not approve the settlement or Class Counsel's application. To object, you must send a letter or other written statement stating that you object to the settlement in <u>Zanghi v. FreightCar America, Inc.</u>, Civil Action No.: 13-146. Be sure to include your name, address, telephone number, your signature, and a full explanation of all the reasons you object to the settlement or to Class Counsel's application for fees and costs (and, if applicable, the name, address and telephone number of your attorney). **Your written objection must be filed with the Court,**

and mailed to the counsel listed below, postmarked no later than [date] at the following addresses:

*Clerk of Court:*

Office of the Clerk
208 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901

*Class Counsel:*

Pamina Ewing, Esq.
Feinstein Doyle Payne & Kravec, LLC
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, Pennsylvania 15219

*Counsel for FreightCar:*

Nancy G. Ross, Esq.
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606

**Be sure to include "Zanghi v. FreightCar America, Inc., Civil Action No.: 13-146" on the first page of all documents.**

THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you are not required to.

**15. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing at [time] on [date] at the U.S. Courthouse, 208 Penn Traffic Building, 319 Washington Street, Johnstown, PA 15901. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Judge will determine whether and to what extent parties will be permitted to address the Court at the hearing. The Court will also decide the amount of Class Counsel's fees and expenses. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**16. Do I have to go to the fairness hearing?**

No, Class Counsel will answer questions the Court may have. You are, however, welcome to

come at your own expense. If you send an objection, you do not have to go to Court to talk about it. As long as your objection is postmarked by [date], the Court will consider it. You also have the right to retain a lawyer at your own expense to represent you at the fairness hearing, but it is not necessary to do so.

| **17. May I speak at the hearing?** |
|---|

If you are a Class Member and have submitted an objection to the settlement as described in the response to question 14, you may ask the Court for permission to speak—with or without an attorney—at the Fairness Hearing. To do so, you must send a letter to the attorneys indicated above in the answer to question 14, saying that it is your "Notice of Intention to Appear." Be sure to include your name, address, telephone number, and your signature (and, if applicable, the name, address and telephone number of your attorney). Your Notice of Intention to Appear must be postmarked no later than [date].

**IF YOU DO NOTHING**

| **18. What happens if I do nothing at all?** |
|---|

The settlement does not require you to do anything and there is no penalty for doing nothing at all. If the Court approves the settlement, you will be bound by it, regardless of whether you filed an objection.

**GETTING MORE INFORMATION**

| **19. Are there more details about the settlement?** |
|---|

This Notice summarizes the proposed settlement. More details are set forth in the parties' Settlement Agreement. To obtain the Settlement Agreement, or for more information regarding the settlement, including Class Counsel's fee application once it is filed, you may contact Class Counsel to request a copy. The address, phone number, and website are:

Feinstein Doyle Payne & Kravec, LLC  
429 Forbes Avenue  
Allegheny Building, 17th Floor  
Pittsburgh, Pennsylvania 15219  
(412) 281-8400  
www.fdpklaw.com

You can also inspect any of the documents filed in this case, free of charge, by visiting the Clerk of Court, U.S. Courthouse, 208 Penn Traffic Building, 319 Washington Street, Johnstown, PA 15901, during regular business hours. You can purchase copies of those documents from the Clerk of Court.

| **20. How do I get more information?** |
|---|

On October 14, 2015, all Class Members are invited to a presentation that addresses the terms of the proposed settlement.  Attorneys from the lawsuit and a representative from the VEBA will be present and will be answering your questions.  Two meetings will be held, one at 2:00 pm and one at 5:00 pm.  The meetings will be held at:

    Aces' Lounge
    316 Chestnut St.
    Johnstown, PA 15906

You can also call Class Counsel at (412) 281-8400 or write them at the address above to get more information about the settlement or to help you determine whether you are a Class Member.  PLEASE DO NOT CONTACT THE COURT.  Court personnel cannot or are not authorized to answer your questions.

                DATE: _____