## SETTLEMENT AGREEMENT
## ZANGHI V. FREIGHTCAR AMERICA, INC.

**I.      Introduction**

This Settlement Agreement[1] is designed to transfer the Net Settlement Amount to the USW/Crucible Retirees Health and Welfare Trust, for the provision of Health and Welfare Benefits for the benefit of the Plaintiffs and the Class Members who they represent and also to relieve Defendants of any future liability for Health and Welfare Benefits for these Plaintiffs and the Class Members who they represent.  This Settlement Agreement is made for the sole purpose of settling the Actions on a class-wide basis.  This Settlement Agreement is made in compromise of disputed claims.  This Settlement Agreement is intended to fully, finally and forever resolve, discharge and settle the Released Claims upon the terms and conditions set forth below.

Because the Actions include a class action, this Settlement Agreement must receive preliminary and final approval by the Court.  In addition, although the Class has already been certified for purposes of liability, the Class must be certified for purposes of settlement, and the Parties agree that the terms and structure of the settlement warrant class certification.   The Parties also agree that the Class Representatives should be appointed as the class representatives for purposes of the settlement.  The Parties have agreed to resolve the Actions by this Settlement Agreement, but to the extent it is not approved, the Parties agree that each of them reserves all rights to challenge all claims, allegations and defenses in the Actions, including the appropriateness of class certification as to damages, upon all procedural, legal and factual grounds and to assert all claims, defenses and privileges, exactly as though this Settlement had never taken place.

**II.      The Parties to this Settlement Agreement**

---

[1] All capitalized terms shall have the meanings defined below in Section VI.1.

This Settlement Agreement is made by and among the following Parties: (i) the Class Representatives (on behalf of themselves and on behalf of the entire Class) with the guidance and approval of Class Counsel, (ii) the Union, and (iii) Defendants.

The "Class" consists of the following individuals:

(1) former FreightCar employees that were represented by the USW at the time of their retirement from FreightCar, and who upon retirement received or were eligible to receive medical and life insurance benefits under the JAC USWA Health and Welfare Plan (the "Plan"); and (2) those individuals who received or were eligible to receive medical and life insurance benefits under the Plan as a spouse, surviving spouse, or dependent of an aforementioned former FreightCar employee.

## III.    Litigation Background

This Settlement Agreement is designed to resolve two consolidated actions entitled Anthony Zanghi, et al. v. FreightCar America, Inc., et al., Case No. 3:13-cv-00146-KRG (the "Zanghi Action"); and FreightCar America, Inc. v. United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC, et al., Case No.: 3:14-cv-00017-KRG (the "FreightCar Action") (collectively, "the Actions").

1.    Zanghi Action: On July 9, 2013, the Union and the Class Representatives, on behalf of a putative class, filed suit against FreightCar in the United States District Court for the Western District of Pennsylvania.  The complaint alleged that the Class Representatives and the Class were entitled under the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA") to certain retiree medical and life insurance benefits.

FreightCar denied that it was required to provide any further benefits to the Class Representatives or the Class.  It claimed that it was free to modify or terminate the Class Members' welfare benefits at any time, that it never agreed to place any conditions on its right to

make such changes, and that it nevertheless satisfied any conditions that Plaintiffs claimed did exist.

The Court certified the above-defined Class as to liability, and in July 2014, the parties filed cross-motions for summary judgment.  In a memorandum opinion and order dated March 30, 2015, Judge Kim R. Gibson denied both motions.

Trial was set to begin on August 25, 2015.

**2.**    <u>FreightCar Action</u>: The FreightCar Action was filed on July 8, 2013, in the United States District Court for the Northern District of Illinois.  In that action, FreightCar sought a declaratory judgment confirming its authority to modify or terminate certain welfare benefits. The FreightCar Action was subsequently transferred to the United States District Court for the Western District of Pennsylvania and consolidated with the Zanghi Action.

**3.**    This Settlement Agreement also conclusively and finally resolves any and all issues that were addressed or could have been addressed in the following cases:

- <u>United Steelworkers of America, AFL-CIO-CLC, Geraldine Deemer, and Darrell Shetler v. Johnstown America Corporation, et al.</u>, No. 2:02-cv-806 (W.D. Pa.) ("<u>Deemer</u>");

- <u>United Steelworkers of America, AFL-CIO-CLC, and Reggie Britt, et al. v. Johnstown America Corporation, et al.</u>, No. 2:03-cv-1298 (W.D. Pa.) ("<u>Britt</u>");

- <u>Robert A. Hayden, Jr., and Kenneth J. Sowers, et al. v. FreightCar America. Inc. et al.</u>, No. 3:07-cv-201 (W.D. Pa.) ("<u>Hayden/Sowers</u>").

**IV.**    **FreightCar's Denial of Wrongdoing or Liability and the Benefits of Settlement**

FreightCar denies all of the claims and contentions by the Union and the Class Representatives in the Actions, and FreightCar believes that the evidence supports its position. Nonetheless, FreightCar has concluded that further conduct of the Actions would be protracted and expensive.  FreightCar has taken into account the uncertainty and risks inherent in any

litigation. FreightCar has therefore determined that it is desirable and beneficial to it that the Actions be settled pursuant to the terms and conditions in this Settlement Agreement.

**V.     Claims of the Plaintiffs and the Benefits of Settlement**

The Class Representatives, Class Counsel, and the Union believe that the claims they have asserted have merit, and they believe that evidence developed to date supports those claims. However, Plaintiffs recognize and acknowledge the expense and length of the type of continued proceedings necessary to prosecute the Actions against FreightCar through trial and through appeals. Plaintiffs also recognize that FreightCar has asserted defenses to their claims. In addition, Plaintiffs have taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in such litigation. In addition, Class Counsel have conducted a thorough investigation into the facts and law relating to the Actions and have analyzed and evaluated the merits of the parties' contentions. Class Counsel have also evaluated the risks, delay and difficulties involved in establishing liability, and in the event of liability, a right to recovery in excess of that offered by this settlement and the likelihood that the Actions could be further protracted and expensive. Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the Actions is in the best interests of the Settlement Class.

**VI.    Terms of Settlement Agreement**

It is further agreed by and between the Class Representatives (for themselves and the proposed Class), the Union, and Defendants, with the assistance of their respective counsel, that the Actions and the Released Claims shall be fully and finally compromised, settled and released; the Actions shall be dismissed with prejudice; and the Settlement Agreement will be

implemented upon and subject to the terms and conditions of the Settlement Agreement upon entry of the Judgment.

**1.    Definitions**

1.1    "Actions" means the Zanghi Action and the FreightCar Action as described above.

1.2    "Award for Attorneys' Fees and Costs" means the amount of any fees and costs awarded to Class Counsel by the Court pursuant to the terms of Section 5.5.1.

1.3    "Class Counsel" means the law firms of Feinstein Doyle Payne & Kravec, LLC and B Zimmerman Law.

1.4    "Class Member" means a person who is a member of the Class.

1.5    "Class Notice" means the notice entitled "Important Notice About Your Health Insurance And Life Insurance Benefits From FreightCar America, Inc." to be approved by the Court.

1.6    "Class Representatives" means Anthony J. Zanghi, Kenneth J. Sowers, Dominic McCuch, James Hohman, and Darrell Shetler.

1.7    "Clerk of Court" means the Clerk of Court for the United States District Court, Western District of Pennsylvania.

1.8    "Court" means the United States District Court for the Western District of Pennsylvania.

1.9    "Defendants" means FreightCar America, Inc., Johnstown America Corporation, and Johnstown America Corporation USWA Health & Welfare Plan

1.10    "Effective Date" means the date on which the Judgment entered by the Court becomes final and not subject to further appeal (which includes the final disposition of a petition for certiorari if one is filed).

1.11    "FreightCar Payment" means $32,750,000.00 USD, if made on or prior to February 16, 2016.   If made after February 16, 2016, "FreightCar Payment" means $32,750,000.00 USD plus simple interest, accruing at the rate of 5 percent per annum from February 16, 2016.  In no case shall "FreightCar Payment" exceed $33,000,000.00.

1.12    "FreightCar" means FreightCar America, Inc., and its subsidiaries.

1.13    "FreightCar Releasees" means Defendants (as defined above), as well as FreightCar's subsidiaries, divisions, joint ventures and assigns, retiree health and welfare benefit plans, its committees with oversight of benefits matters, and each of these entities' past or present directors, officers, employees, partners, members, principals, fiduciaries, administrators, agents, underwriters, insurers, co-insurers, reinsurers, shareholders, attorneys, accountants or auditors, banks or investments banks, associates, and personal or legal representatives. However, notwithstanding anything to the contrary in the preceding sentence, neither the Steelworkers Health & Welfare Fund nor any third party that provided Class Members with life insurance benefits under the terms of the Deemer, Britt, or Sowers settlements are FreightCar Releasees with respect to any claims that accrued before November 1, 2013.

1.14    "Health and Welfare Benefits" means any and all benefits related to health care (including prescription drugs, major medical, and other medical expense), health insurance premium reimbursements, life insurance, dental insurance, or vision insurance received by or claimed by or on behalf of the Class from FreightCar.  It shall also include the expenses incurred in providing and administering such benefits, including, without limitation, claims processing

costs, expenses associated with the enrollment and maintenance of data regarding covered individuals, collection of any required contributions from covered individuals, stop loss insurance premiums and premium taxes.

1.15    "Joint Motion for Preliminary Approval of Class Action Settlement Agreement" means a joint motion and memorandum filed with the Court to have the Court preliminarily approve this Settlement Agreement, certify the Class for purposes of settlement, enter the Preliminary Approval Order, and approve the form and manner of Class Notice to be served on Class Members.

1.16    "Judgment" means the judgment rendered by the Court approving this Settlement Agreement in its entirety without change (unless FreightCar and Plaintiffs have expressly consented to such changes in writing).

1.17    "Last Known Address" means the most recent mailing address for a Class Member as such information is contained in the pension records maintained by FreightCar.

1.18    "Net Settlement Amount" means the difference between the FreightCar Payment and the Award for Attorneys' Fees and Costs.

1.19    "Notice Mailing Deadline" shall be the date seven (7) days after the Preliminary Approval Date (unless otherwise stated in the Preliminary Approval Order).

1.20    "Notice of Final Approval to Class Members" means a notice to be sent by Plaintiffs to Class Members following the Effective Date, to be approved by the Court.

1.21    "Notice Response Deadline" shall be forty-five (45) days after the Class Notice is mailed to the Class Members, and shall be set forth in the Class Notice.

1.22    "Parties" means the Class Representatives, the Union, and the Defendants.

1.23    "Plaintiffs" means the Class Representatives and the Union.

1.24   "Preliminary Approval Date" shall mean the date on which the Court enters the Preliminary Approval Order.

1.25   "Preliminary Approval Order" shall mean that Order described in Sections 5.3.1 and 5.3.2.

1.26   "Released Claims," including unknown claims as referenced in Section 4.2.2, shall mean all claims, known or unknown, of any Class Member (or beneficiaries or assignees) or the Union (or any divisions, joint ventures and assigns, past or present directors, officers, employees, partners, members, principals, fiduciaries, administrators, agents, underwriters, insurers, co-insurers, reinsurers, attorneys, accountants, or auditors, banks or investment banks, associates, or personal or legal representatives, including the Steelworkers Health & Welfare Fund and the VEBA defined in Paragraph 1.30 and its Trustees), for any type of relief against the FreightCar Releasees for declaratory relief, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorney fees, litigation costs, or any other monetary remedy, as well as injunctive relief, restitution, or other equitable relief based on the following (potentially overlapping) categories of claims: (a) any and all claims for any Health and Welfare Benefits, including, but not limited to, any claims related to the structure, operation or administration of the VEBA defined in Paragraph 1.30; and (b) any and all claims for payment of medical benefits, major medical benefits, managed care benefits, prescription drug benefits, premium reimbursement, life insurance benefits, dental insurance benefits, or vision insurance benefits; and (c) any and all claims for declaratory or injunctive relief in opposition to FreightCar's asserted right to modify, reduce or terminate the Health and Welfare Benefits of the Class Members.  It is understood and agreed that the Released Claims do not include rights or claims to enforce the terms of this Settlement Agreement.  It is further understood and agreed

that the Released Claims include all claims under any contract, collective bargaining agreement, summary plan description, statute, including without limitation ERISA or the LMRA, or any other theory or basis.  For avoidance of doubt, the Released Claims include any claims that were, or could have been asserted in <u>Deemer</u>, <u>Britt</u>, or <u>Hayden/Sowers</u>.

1.27   "Settlement Hearing" or "Fairness and Good Faith Determination Hearing" means the hearing conducted by the Court for the purpose of (i) determining the fairness, adequacy and reasonableness of the Settlement Agreement pursuant to class action procedures and requirements; (ii) determining the good faith of the settlement terms contemplated by this Settlement Agreement; and (iii) entering Judgment.

1.28   "Trustees" means the trustees of the VEBA.

1.29   "Union" means the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC.

1.30   The "Voluntary Employees Beneficiary Association" or "VEBA," means USW/Crucible Retirees Health and Welfare Trust, the funds of which will be used to provide Health and Welfare Benefits to Class Members under a new and revised plan of benefits to be created by the Trustees of the VEBA.  The VEBA will be an organization described in Section 501(c)(9) of the Internal Revenue Code.  FreightCar shall not have any  liability in connection with the establishment of the VEBA or its ongoing existence, including, but not limited to, its compliance with applicable laws, nor shall FreightCar have any responsibility in connection with the VEBA other than those responsibilities set forth in this Agreement.

## 2.    Consideration to Class Members

2.1   The VEBA trust agreement, as amended, is included as an exhibit to the Joint Motion for Preliminary Approval of Class Action Settlement Agreement.

2.2     Within ten business days after the Effective Date, FreightCar will contribute the Net Settlement Amount to the VEBA by wire transfer.  Such contribution is a payment pursuant to Section 302(c)(2) of the Labor Management Relations Act of 1947, as amended.

2.3     If no Judgment is entered, or if the Judgment is reversed, modified, or vacated as a result of an appeal, then the Parties shall resume the Actions at that time as if no settlement had been agreed to.  In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in these Actions or in any other proceeding for any purpose.

**3.     Operation of the VEBA**

3.1     *Control of the VEBA*

3.2     Defendants shall not be responsible for the creation and establishment of the terms of the VEBA, for the timely and proper filing of the application for recognition of exemption under Internal Revenue Code Section 501(a) (Form 1024), for the timely and proper filing of the annual returns for an organization exempt from tax (Form 1023), for the timely and proper filing of the annual reports of employee benefit plans, or for any other return required to be filed by or with respect to the VEBA or the benefits provided thereunder.  Defendants shall not be responsible for ensuring the VEBA's compliance with all applicable laws, and shall have no liability in the event the VEBA is deemed to violate any applicable laws.  Defendants shall have no responsibility or liability, other than making a one-time contribution of the Net Settlement Amount to the VEBA, for the VEBA's continuing existence or the VEBA's continuing ability to provide Health and Welfare Benefits.  Defendants shall have no authority or obligation to assess or determine the fairness of the VEBA's design or operation to the Class Members, shall have no discretion to establish or administer the VEBA or any funds therein,

including but not limited to establishing the Health and Welfare Benefits to which Class members are entitled, and shall not be deemed a fiduciary or sponsor of the VEBA. Defendants shall not be responsible for any costs of VEBA administration, including but not limited to fees for lawyers, auditors, and other professionals. Defendants shall not be responsible for establishing a procedure for the selection and monitoring of the Trustees.

3.3    FreightCar shall be a "participating employer" as to the VEBA for the sole purpose of making the one-time contribution of the Net Settlement Amount at the time specified in this Agreement and shall sign the VEBA participation agreement attached to the Joint Motion for Preliminary Approval of Class Action Settlement Agreement. The VEBA participation agreement shall be deemed a part of this Settlement Agreement.

3.4    Upon reasonable request by the Union or Class Counsel, information pertaining to health, welfare and pension benefits maintained by FreightCar or its service providers on behalf of Class Members and their eligible dependents shall be provided as necessary for the establishment for the VEBA. The Court's Preliminary Approval of this Settlement Agreement shall constitute a Court order approving the exchange of this information.

3.5    After the establishment of the VEBA, FreightCar shall have no ongoing obligation to provide information regarding administration of the VEBA or for the furnishing of welfare benefits to Class Members.

**4.    Release of FreightCar**

4.1    FreightCar shall have no responsibility for any Health and Welfare Benefits claims incurred on and after the date on which such benefits were terminated by FreightCar.

4.2    *Released Claims*

4.2.1    Upon the Effective Date, the Union, the Class Representatives and each of the Class Members shall have fully, finally and forever released, dismissed with prejudice, relinquished and discharged all Released Claims.  This Release does not release claims by the Union or Class Members to enforce the Settlement Agreement or Judgment.

4.2.2    With respect to any and all Released Claims, the Union and Class Representatives agree that upon the Effective Date, they and the Class Members will be releasing all Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent. The Class Representatives acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for as a key element of the Settlement Agreement of which this release is a part.

**5.        Procedure for Court Approval**

5.1      Via the Joint Motion for Preliminary Approval of Class Action Settlement Agreement, the Parties will jointly request that the Court enter a Proposed Preliminary Approval Order that, *inter alia*, certifies the Class for purposes of this settlement; preliminarily approves the Settlement Agreement; approves the form, content, and distribution of the proposed Class Notice; establishes a procedure for filing objections to this settlement; and schedules the Settlement Hearing.

5.2      If the Court enters the Preliminary Approval Order, then at or before the resulting Settlement Hearing, the Union, the Class Representatives and FreightCar through their counsel shall endeavor in good faith to address any written objections from Class Members or any issues or concerns expressed by Class Members who testify at the Settlement Hearing, in order to obtain approval of all settlement terms contemplated by this Settlement Agreement.  They further

shall endeavor in good faith to address any issues or concerns expressed by the Court during such Settlement Hearing.

5.3    *Notice to Class Members*

5.3.1    If, by entering the Preliminary Approval Order, the Court provides authorization to send a Class Notice to Class Members, Class Counsel will mail the Class Notice to all Class Members on or before the Notice Mailing Deadline.  This Class Notice shall be mailed via first class mail through the United States Postal Service, postage pre-paid.

5.3.2    FreightCar shall prepare the name and Last Known Address for each Class Member and provide such information to Class Counsel.  The parties agree that by preliminarily approving this Settlement Agreement, the Court will have authorized this information transfer.

5.3.3    Unless the parties agree otherwise in writing or the Court so orders, each Class Notice shall be mailed to the last known address of each Class Member no later than the Notice Mailing Deadline.

5.3.4    FreightCar shall bear no responsibility for any costs associated with the mailing described in Section 5.3.1, or any costs in excess of the FreightCar Payment.

5.3.5    Unless Class Counsel receives a Class Notice returned from the United States Postal Service for reasons discussed below in this paragraph, each Class Notice shall be deemed received by the Class Member to whom it was sent three days after mailing.  In the event that subsequent to the first mailing of a Class Notice Action and prior to the deadline for a response, that Class Notice is returned to Class Counsel by the United States Postal Service with a forwarding address for the recipient, Class Counsel shall re-mail the notice to that address, and the forwarding address shall be deemed the updated address for that Class Member.  The Class Notice shall be deemed received upon mailing once it is mailed for the second time.  In the event

that subsequent to the mailing of any Class Notice, and at least fourteen (14) days prior to the Notice Response Deadline, a Notice is returned by the United States Postal Service because the address of the recipient is no longer valid, *i.e.,* the envelope is marked "Return to Sender," and with no forwarding address, Class Counsel shall again undertake a reasonable secondary address verification measure (i.e. a standard skip trace procedure) to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, Class Counsel will re-send the Notice as promptly as possible and in any event within fourteen (14) days of receiving such information. In either event, the Notice regarding Settlement of the Class Action shall be deemed received once it is mailed for the second time.

5.4     *Responses to the Class Notice and the Motion for Final Approval*

5.4.1    Class Members have whatever rights are granted to them in accordance with the Federal Rules of Civil Procedure and as provided in the Preliminary Approval Order to file written objections to the Settlement Agreement at their own expense on or before the Notice Response Deadline and to appear at the Settlement Hearing.  The Class Notice will advise Class Members of this option and that all objections must be filed in writing, that any objections not filed in writing are of no effect, and that Class Members exercising this option shall be responsible for any attorneys' fees or costs incurred in connection with such objections.

5.4.2    Prior to the Settlement Hearing and consistent with the instructions of the Court, the Union, the Class Representatives and FreightCar shall jointly move the Court for entry of the Order of Final Approval (and the associated entry of Judgment).

5.5     *Payment of Costs and Attorney Fees to the Class Representatives.*

5.5.1    Subject to Court approval, FreightCar agrees to pay an Award for Attorneys' Fees and Costs to Class Counsel in an amount not to exceed $1,300,000, for all attorneys' fees and

costs related to the Actions and the subject matter of the Actions, which all Parties agree is reasonable under the circumstances. The Union, Class Representatives and Class Counsel, on behalf of themselves and all Class Members, agree that they shall not seek nor be entitled to any additional attorney fees or costs from any FreightCar Releasee under any theory related in any way to the Actions or the subject matter of the Actions. The Union, Class Representatives, and Class Counsel agree that they shall be responsible for filing with the Court any pleadings or other submission necessary to obtain the approval of the Court for the payment of attorney's fees and costs. FreightCar agrees not to oppose any request for approval of this payment of fees or costs provided it does not exceed $1,300,000. In the event that the Court (or the appellate court) awards less than $1,300,000 for attorneys' fees and costs under this Settlement Agreement, only the awarded amounts shall be paid, and that payment shall constitute satisfaction of the obligations of this paragraph and full payment thereunder. Payment of the Award for Attorneys' Fees and Costs shall not be due until ten business days after the Effective Date. FreightCar shall make this payment pursuant to this paragraph to Feinstein Doyle Payne & Kravec, LLC, which shall provide counsel for FreightCar with the pertinent taxpayer identification numbers and a Form W-9. Other than any reporting of this fee payment as required by this Settlement Agreement or law, which FreightCar shall make, FreightCar shall not be responsible for the reporting and payment of any federal, state or local income or other form of tax on any payment made pursuant to this paragraph. The payment made pursuant to this paragraph shall constitute full satisfaction of any claim against Defendants by the Union, its counsel, or any Class Member or Class Counsel for fees and costs related to the Actions and the subject matter of the Actions.

 5.5.2 Unless otherwise expressly provided, FreightCar shall have no responsibility for, and no liability whatsoever with respect to, the allocation among the Union, Class

Representatives, Class Counsel or any other person who may assert some claim thereto, of any award or payment issued or made in the Actions or pursuant to this Settlement Agreement, including, but not limited to any award or payment pursuant to Section 5.5.1.

5.6    *Notice Administrator.*

5.6.1   Class Counsel may act as Notice Administrator, or it may hire a Notice Administrator.  Plaintiffs' counsel shall be responsible for the fees and expenses incurred by the Notice Administrator as a result of procedures and processes required by this Settlement Agreement. FreightCar shall have no responsibility for any fees or expenses incurred by or on behalf of the Notice Administrator.

5.6.2   The actions of the Notice Administrator shall be governed by the terms of this Settlement Agreement.   FreightCar will provide relevant information needed by Plaintiffs' counsel or the Notice Administrator per this Settlement Agreement, provide instructions to the Class counsel or the Notice Administrator with regard to actions required by this Settlement Agreement, and engage in related communications with Class Counsel or the Notice Administrator without notice or copies to Class Members or the Court.

**6.      Class Action Fairness Act Provisions**

6.1     No more than ten days after filing the Motion for Preliminary Approval of Class Action Settlement Agreement and a copy of this Settlement Agreement with the Court, FreightCar will serve on the Attorney General of the United States, the Secretary of Labor of the United States, the Office of the Attorney General for each State in which a Class Member is believed to currently reside, and the state department of labor for each State in which a Class Member is believed to currently reside a copy of the following: (a) the amended complaint in the Actions; (b) the Joint Motion for Preliminary Approval of Class Action Settlement Agreement,

including the proposed Class Notice and the Proposed Order Granting Preliminary Approval; (c) the Settlement Agreement; and (d) a list of the Class Members by known State of residence and the percentage share of the Class Members believed to reside in each State.

6.2     The Parties agree that the Settlement Hearing will not take place until 90 days after FreightCar has provided the notices contemplated by Section 6.1. The Parties further agree that it is their intent that FreightCar satisfy the government notice provisions of the Class Action Fairness Act of 2005; the Class Representatives and Class Counsel, on behalf of the Class, agree also that they will cooperate with FreightCar to make any changes in the terms or procedures set forth in this Settlement Agreement to facilitate such compliance.

6.3     Class Representatives and Class Counsel agree that these measures set forth in this Section 6 will satisfy the notice requirement of the Class Action Fairness Act of 2005 and 28 U.S.C. § 1715(b) in particular, and that no Class Member may seek to avoid the binding effect of the Judgment under the terms of the Class Action Fairness Act of 2005 and 28 U.S.C. § 1715(b), and by operation of the Judgment, all Class Members waive their rights to do so.

**7.     Miscellaneous Provisions**

7.1     No Person shall have any claim against Class Counsel, the Class Representatives, counsel for the Union, the Notice Administrator, counsel for FreightCar, or any of the FreightCar Releasees based on the payments made or other actions taken in accordance with this Settlement Agreement or orders of the Court.

7.2     Notwithstanding any other provision of this Settlement Agreement, no order of the Court reducing, or modification or reversal on appeal of any order of the Court reducing, the amount of any attorney fees or costs to be paid by FreightCar to Class Counsel shall constitute

grounds for cancellation or termination of the Settlement Agreement, reduction of the FreightCar Payment, or grounds for limiting any other provision of the Judgment.

7.3     The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement, (b) agree to cooperate to the extent reasonably necessary to secure approval of the Settlement Agreement and to effect and implement all terms and conditions of the Settlement Agreement, and (c) agree to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement Agreement.

7.4     The Settlement Agreement compromises claims that are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim or defense. The Parties agree that the terms of the Settlement Agreement were negotiated in good faith by them, and reflect settlement terms that were reached voluntarily after consultation with competent legal counsel.

7.5     Neither the Settlement Agreement, nor any act performed, nor document executed in furtherance of the Settlement Agreement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of any of the Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal, except in connection with any effort or action to enforce the Settlement Agreement.

7.6     The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of FreightCar, the Union, Class Representatives and the Class Counsel, or their respective successors-in-interest.

7.7     The Settlement Agreement constitutes the entire agreement among the Parties hereto.  No representations, warranties, or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in this Agreement. Except as otherwise provided herein, each Party shall bear its own costs.

7.8     Class Counsel, on behalf of the proposed Classes, are expressly authorized  by the Class Representatives to take all appropriate action required or permitted to be taken by the Class Representatives pursuant to the Settlement Agreement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the proposed Classes which they deem appropriate, subject to the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005.  The signature of Class Counsel is sufficient to bind the Class Representatives and Class Members to the terms of this Settlement Agreement.

7.9     Each counsel or other person executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such counsel or other person has the full authority to do so.

7.10    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

7.11    The Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties; but this Settlement Agreement is not designed to and does not create any third party beneficiaries except for the FreightCar Releasees, who are intended to be third party beneficiaries.

7.12    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement Agreement.

7.13    The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the Commonwealth of Pennsylvania, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with and governed by the substantive laws of the United States and the Commonwealth of Pennsylvania without giving effect to the Commonwealth of Pennsylvania's choice of law principles.

7.14    The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Party. No Party shall be deemed the drafter of this Settlement Agreement. The Parties acknowledge that the terms of the Settlement Agreement are contractual and are the product of negotiations between the Parties, by or with the assistance of their counsel. Each Party through their counsel cooperated in the drafting and preparation of the Settlement Agreement. The Parties hereto have caused the Settlement Agreement to be executed.

Dated: _9/22/2015_

FREIGHTCAR AMERICA, INC., on its own
behalf and on behalf of the FreightCar Releasees

By: _____

CLASS COUNSEL

COUNSEL FOR
FREIGHTCAR

_____

_____

_____          _____

COUNSEL FOR THE UNION

_____

21